**SPERRY RAND CORPORATION**

v.

**INTERNATIONAL BUSINESS MA-CHINES CORPORATION.**

**Misc. No. 45.**

United States District Court
D. Delaware.
July 29, 1968.

---

8. Defendant's Supplemental Brief, page 4.

9. Smith v. Whitmore, supra.

10. 10 Del.C. § 6302(d).

Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, Del., Thomas M. Ferrill, Jr., Philadelphia, Pa., and Sheldon Kapustin, Blue Bell, Pa., for Sperry Rand Corp.

Clair John Killoran, of Killoran & Van Brunt, Wilmington, Del., Martin G. Reiffin, Hopewell Junction, N. Y., Jules P. Kirsch, New York City, for International Business Machines Corp.

## OPINION

LAYTON, District Judge.

On June 4, 1968, this Court directed International Business Machines Corporation (I.B.M.), the Senior Party in Patent Interference No. 93,544, to produce certain categories of documents requested by Sperry Rand Corporation (Sperry), the Junior Party in the Interference, pursuant to Rule 34 of the Federal Rules of Civil Procedure and 35 U.S.C. § 24. Production was ordered subject to the following proviso:

> "IBM will be required to produce the documents in all of the categories listed except for those which it deems pro-

tected by the privilege. As to those documents, it may, in lieu of production, fully identify such documents in writing to Sperry, and if Sperry disagrees with IBM's contention, the matter may be submitted to this Court for its determination."

By letters all dated June 19, 1968, I.B.M. advised Sperry that it was withholding approximately ninety documents[1] which it contended were either privileged as confidential communications between attorney and client or not subject to production as attorney work-product.

At oral argument, Sperry took the position that no privilege can attach to any communication between attorney and client where the communication relates to a patent interference in the Patent Office. Similarly, Sperry urged that there is no work-product exception with respect to material prepared for the prosecution of a patent interference in the Patent Office. Sperry's view is based upon a part of Judge Leahy's opinion in Zenith Radio Corp. v. Radio Corporation of America, 121 F.Supp. 792, 794 (Del., 1954), which was re-affirmed by this Court in In re Natta, 264 F.Supp. 734 (Del., 1967) and by Chief Judge Wright in American Cyanamid v. Hercules Powder Co., 211 F.Supp. 85 (Del., 1962) and Minnesota Mining and Manufacturing v. Gentex, 153 U.S.P.Q. 110 (Del., 1967), rehearing denied, 153 U.S. P.Q. 334 (Del., 1967).

I.B.M. contends that the rationale of that portion of Zenith here under consideration was seriously undercut by the United States Supreme Court's opinion in Sperry v. State of Florida, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), as Judge Steel ruled in Sperti v. Coca Cola, 262 F.Supp. 148 (Del., 1966). Moreover, I.B.M. suggests that the rule of Zenith, insofar as it intimates that the prosecution of a patent interference is not among the "hallmark activities

---

[1]. This figure is exclusive of duplications and it discounts documents about which the parties have been able to resolve their differences since June 19th.

of lawyers", does not take a realistic view of patent interference proceedings.

The questions now before the Court are narrow. Simply put, they are:

(a) Whether the attorney-client privilege can be claimed as to communications, otherwise privileged,[2] made to an attorney for the purpose of securing legal advice or services in the prosecution of a patent interference in the Patent Office.

(b) Whether the work-product of an attorney relating to the prosecution of a patent interference in the Patent Office can be protected from discovery under the work-product doctrine of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Because, as will hereafter be seen, the documents which are being withheld must be examined one by one and page by page for any earmarks which would tend to indicate that they are not within the attorney-client privilege or are not work-product, this opinion will address itself only to the legal questions set forth, leaving the application of the law to any given document to a supplemental memorandum.

## ATTORNEY-CLIENT PRIVILEGE

Sperry's contention that there is no attorney-client privilege in interference proceedings arises from the following language in the Zenith opinion:

"'Acting as a lawyer' encompasses the whole orbit of legal functions. [Attorney-employees of patent departments] do not 'act as lawyers' * * * when handling interference proceedings in the Patent Office concerning patent applications." 121 F.Supp. at page 794.

In reading this language, it is important to note that it was not intended as an express holding; but rather, as an illustration of a number of activities falling outside the "orbit of legal functions". And, even more significantly, the language was directed to the "attorney-employees of patent departments" as opposed to "house counsel". The distinction apparently in Judge Leahy's mind was that articulated by Judge Wyzanski in United States v. United Shoe Machinery Corporation, 89 F.Supp. 357 (Mass., 1950). In United Shoe, Judge Wyzanski wrote that for the purposes of the privilege, "house counsel" are not to be distinguished from "outside counsel" in that both act as attorneys giving legal advice as opposed to acting as business advisers or officers of the corporation. Members of the patent department, on the other hand, "function less as detailed legal advisers than as a branch of an enterprise founded on patents." "They are comparable", the Judge wrote, "to the employees with legal training who serve in the mortgage or trust departments of a bank or in the claims department of an insurance company." "Grist which comes to their mill has a higher percentage of business content than legal content." [3]

Eight years after Zenith, Judge Wright was faced with a claim of attorney-client privilege as to communications prepared by an attorney-employee of a patent department. American Cyanamid v. Hercules, supra. After re-affirming Judge Leahy's Zenith opinion, Judge Wright observed that the distinction between "house counsel" and "attorney-employees", for the purposes of the privilege, should not be determinative.

"It is admitted in United Shoe that such employees as house counsel and members of the patent department both serve dual functions. Since de-

---

2. See I.B.M. v. Sperry Rand, 44 F.R.D. 10, 12 (Del., 1968).

3. While Judge Wyzanski was characterizing the legal staff at United Shoe, Judge Leahy apparently found the characterization generally helpful as he employed Judge Wyzanski's terminology in connection with Judge Wyzanski's formulation of the requisites of the attorney-client privilege. See Zenith, supra, at page 794.

gree is the only difference between the two classes it does not seem justifiable to extend the privilege in blanket form to house counsel and totally deny it to members of patent departments. Each case should turn on its own facts." At page 89.

Thus, after American Cyanamid, even though Judge Wright was not faced with the precise question posed here,[4] the status of the "house-counsel" versus "attorney-employee" rule as applied to interference proceedings was, at least, in question.

Following American Cyanamid in this District was Judge Steel's opinion in Sperti v. Coca Cola, supra, where he apparently departed from Judge Leahy's view in Zenith, by deciding that for the purposes of the attorney-client privilege:

" * * * activities by a person duly qualified to practice in [the Patent Office], constitutes one type of practicing law." At page 151.

Shortly after Sperti, however, Judge Wright, in Minnesota Mining and Manufacturing v. Gentex, 153 U.S.P.Q. 334 (Del., 1967), excepted to the breadth of Judge Steel's discussion, apparently fearful that it could be read to give blanket protection to virtually all material prepared in connection with any matter in the Patent Office.

■ On the facts of the instant case. I am not called upon to consider the question of the privilege as related to matters less clearly associated with the conduct of litigation than the active prosecution of a patent interference in

the Patent Office. However, it might be well to recall that in In re Natta, 264 F. Supp. 734 (Del., 1967), I held that documents relating to the preparation and filing of a patent application were not within the ambit of protection afforded by the privilege. More than this, Sperry's instant arguments notwithstanding, I did not decide.

Turning now to the facts of this case, I.B.M. has engaged a team of lawyers to represent it in the pending interference proceeding. The team is composed of private attorneys specially retained and of attorneys regularly employed by I.B.M. The I.B.M. employees are members of I.B.M.'s "Legal Department" and not its "Patent Engineering Department". The former is concerned with "legal problems" exclusively, while the latter handles "business problems, so called."[5]

The principal "attorney-employee" for I.B.M. is Martin Reiffin, located at I.B.M.'s facility at Fishkill, New York, and a member of the New York Bar. So far as this Court is aware, from the proceedings here and from the documents submitted to the Court for its inspection, Mr. Reiffin's duties consist of (1) an analysis of I.B.M.'s position in the interference, (2) development of I.B.M.'s case for presentation to the Examiner, (3) the conduct of the deposition proceedings in the time allotted by the Patent Office for the taking of testimony and (4) the preparation and argument of motions to this Court.[6] These activities are, in my view, the "hallmark activities of a lawyer."[7]

---

4. The parties in American Cyanamid were before Judge Wright seeking documents relative to, and for use in, a patent infringment action pending in the District Court rather than documents relative to, and for use in, a patent interference in the Patent Office.

5. See transcript of argument of July 11, 1968, at page 48.

6. Sperry conceded at oral argument that communications made in connection with

the Rule 34 motions presented to this Court are protected by the privilege. Transcript of argument of July 11, 1968, at page 18.

7. The functions of the other I.B.M. employee-attorneys, to the very limited extent that their work is involved in the documents in question, is much the same as that of Mr. Reiffin.

■ Nonetheless, as noted above, Sperry argues that because the communications were generated by the patent interference, they are not protected. With deference, I depart from Judge Leahy's remarks in Zenith to the extent that they were intended to articulate a firm rule. Assuming that the withheld communications were otherwise privileged and that the parties were now before this Court in a civil action instituted under 35 U.S.C. § 146—that is, by way of an appeal from the decision of the Board of Patent Interferences—there could be no question that the documents would not have to be produced. Further, were the litigation in this posture, in all probability the record prepared during the interference proceeding in the Patent Office would be a part of the record in the District Court. 35 U.S.C. § 146. With the foregoing considerations in mind, I an unable to rationalize the application of one standard regarding the availability of the privilege in an interference before the Patent Office and a completely different standard in an interference in the District Court under 35 U.S.C. § 146, especially where, as here, there is considerable likelihood of a civil action following the decision of the Patent Office.

Accordingly, the claim of attorney-client privilege asserted by I.B.M. is not without merit on its face simply because the communications were made in connection with a Patent Office proceeding. Instead, the documents now submitted to the Court for an *in camera* inspection will be individually examined and tested against the requisites for a meritorious claim of privilege.

## WORK-PRODUCT

■ Among the documents withheld by I.B.M. are a number which it claims are attorney work-product. The documents consist of transcripts of interviews with prospective witnesses for the interference, reports on searches in various repositories of collected data for information possibly useful to I.B.M. in the prosecution of the interference, reports by I.B.M. engineers advising the I.B.M. attorneys on technical matters for possible use as argument in the interference, and notes on the current whereabouts of potential I.B.M. witnesses and the like.

Sperry does not dispute that much of the material consists of the impressions, observations and opinions recorded by an attorney, as the product of his investigation of this case in the actual preparation for the interference on behalf of I.B.M. Sperry submits, again citing Zenith and its progeny, that the work-product exception does not protect the material here for the sole reason that it was prepared for the prosecution of an interference and not for litigation before a "court of record."

For essentially the same reasons discussed in connection with I.B.M.'s claim of attorney-client privilege, I depart from Judge Leahy's view that as a matter of law there cannot be a successful claim of work-product where the material was prepared for the prosecution of a patent interference in the Patent Office. As before indicated, this Court is convinced that the better view is one which calls for an examinaion of the documents in question in light of the purpose of the exception and the requisites of a proper claim of work-product as defined in Hickman v. Taylor, supra.