Walter P. GORZEGNO and Foster Wheeler Corporation, Plaintiffs,

v.

Joseph M. MAGUIRE and the Babcock & Wilcox Company, Defendants.

Civ. A. No. M–8–85.

United States District Court,
S. D. New York.

Sept. 6, 1973.

Roland T. Bryan, Stamford, Conn., for defendants; Bryan, Parmelee, Johnson & Bollinger, Stamford, Conn., Alphonse R. Noe, Ronald A. Clayton, Stamford, Conn., Sullivan & Cromwell, New York City, George C. Kern, Jr., New York City, of counsel.

Fitzpatrick, Cella, Harper & Scinto, New York City, for plaintiffs; Neuman, Williams, Anderson & Olson, Sidney Neuman, Robert L. Austin, Chicago, Ill., Shanley & Fisher, L. Bruce Puffer, Jr., Newark, N. J., Marvin A. Naigor, of counsel.

PALMIERI, District Judge.

This is a proceeding in aid of discovery pursuant to 35 U.S.C. § 24 for use in a contested case in the United States Patent Office. A Special Master, Honorable George B. Finnegan, Jr., was appointed by this Court to preside at the taking of discovery by order dated May 16, 1973. A number of hearings have taken place before him and while some discovery has taken place there is much apparently that remains to be done. The hearings have been suspended pending the motion of the defendants, presently before this Court, for legal instructions to the Special Master for the purpose of reviewing and overruling rulings made by him denying defendants' claims to non-disclosure based upon assertions of privileged communications between attorney and client.

The essence of the controversy before the Patent Office stems from charges of fraudulent conduct made against the plaintiffs, Gorzegno and Foster-Wheeler Corporation, by the defendants in connection with the filing by plaintiffs of U. S. Patent Application No. 613,632 and the prosecution of that application in Interference No. 96,476. The defendant Babcock & Wilcox Company had listed Gorzegno as a co-inventor in its pending Patent Application No. 470,819 (the '819 application); and Foster Wheeler Corporation had listed Gorzegno as a co-inventor on its similar pending application 613,632. The Patent Office found that these facts permitted it to come to the conclusion, albeit a rebuttable one, that Foster Wheeler Corporation and its counsel were seeking to support a fraudulent claim of inventorship. Babcock & Wilcox Corporation has relied upon the '819 application signed by Gorzegno, and his subsequent affidavit under Rule 131 of the Rules of Practice in Patent Cases (1970), as its principal proof of the alleged fraud. The defendant Joseph M. Maguire, as patent counsel for Babcock & Wilcox Corporation, was privy to the relationships between Gorzegno and the corporation and was an important actor in this factual context.

The Commissioner of Patents has made it abundantly clear that there should be full inquiry into the circumstances of the preparation, filing and inventorship of the '819 application upon which the defendants' charges of fraud are based and that such inquiry must necessarily entail the full testimony of Mr. Maguire. There can be no doubt that Mr. Maguire is a crucial witness. The suspension of his testimony and of the hearings before the Special Master because of the assertions of the lawyer-client protection against disclosure is unfortunate. The plaintiffs, confronted

by time limitations imposed by the Patent Office, have sought diligently to adduce evidence in rebuttal of the claim of fraud levelled against them by the defendants. But the plaintiffs have been delayed in their search for relevant evidence by procedural tactics of defendants which have had the effect of frustrating disclosure despite sweeping protective orders entered by this Court on May 16, 1973, for defendants' benefit.

The defendants cannot both affirm their reliance on the '819 application as the basis for their charges of fraud against plaintiffs, and deny access to all the facts relating to it.

The Special Master's rulings set forth on pages 975 through 988 of the transcript and communicated orally to the parties on July 12, 1973, are adopted as correct and are in all respects affirmed. What follows is a more detailed analysis of this conclusion.

## I. Application of the privilege.

■ The threshold question arises as to whether the attorney-client privilege attaches to the preparation of patent applications. While there is authority to the effect that patent application activities are not, per se, privileged, U. S. Industries v. Norton Co., 174 U.S.P.Q. 513, 515 (N.D.N.Y.1972); Technographic, Inc. v. Texas Instruments, Inc., 43 F.R.D. 416, 419 (S.D.N.Y.1967); Zenith Radio Corp. v. Radio Corp. of America, 121 F.Supp. 792 (D.Del.1954), those cases can generally be limited to communications "dealing exclusively with the solicitation or giving of business advice, or with the technical engineering aspects of patent procurement or with any other matters which may as easily be handled by laymen. . . ." Georgia-Pacific Plywood Co. v. United States Plywood Corp., 18 F.R.D. 463, 464 (S.D.N.Y. 1956). But the mere fact that the attorney in question is "house-counsel" or that the activities are in connection with a patent application does not deny the availability of an otherwise properly in-

voked attorney-client privilege. *Id.*; United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 360 (D.C.Mass. 1950) (Wyzanski, J.); 4 Moore, Federal Practice ¶ 26.60 [2] n.1 (1972); *see also* Sperry Rand Corp. v. International Business Machine Corp., 45 F.R.D. 287, 291 (D.Del.1968).

## II. Are the documents subject to the privilege?

■ Defendants argue that the documents in question are properly within the scope of the attorney-client privilege as deliberations of a corporate client control group with the in-house patent attorney. While the "control group" doctrine extends the penumbra of the privilege beyond the immediate parties to a given communication, City of Philadelphia v. Westinghouse Electric Corp., 210 F.Supp. 483, 485–486 (E.D. Pa.1962), mandamus and prohibition denied, sub nom., General Electric Co. v. Kirkpatrick, 312 F.2d 742 (3d Cir. 1963), cert. denied, 372 U.S. 943, 83 S. Ct. 937, 9 L.Ed.2d 969 (1963); Natta v. Hogan, 392 F.2d 686, 692 (10th Cir. 1968); *but see* Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487 (7th Cir. 1970), aff'd by an equally divided court, 400 U.S. 348, 91 S.Ct. 479, 27 L. Ed.2d 433 (1971), rehearing denied, 401 U.S. 950, 91 S.Ct. 917, 28 L.Ed.2d 234 (1971), the premises underlying the privilege that the communication consist of legal advice passing from an attorney to his client, United States v. United Shoe Machinery Corp., *supra*, 89 F.Supp. at 358, and that it be regarded and in fact be treated as confidential still pertain. 8 Wigmore, Evidence § 2311 (McNaughton rev. 1961). Consequently, where the confidentiality of the documents is illusory or is abrogated or compromised, the privilege ceases to apply. Mr. Maguire's deposition testimony with respect to certain of the documents withheld on the basis of privilege clearly indicates no knowledge on his part as to confidential treatment of those documents by his co-defendant, The Babcock

& Wilcox Company. The parties invoking the privilege assume the burden of demonstrating its existence, Honeywell, Inc. v. Piper Aircraft Corp., 50 F.R.D. 117, 120 (M.D.Pa.1970), yet the defendants here have made no attempt to explain Mr. Maguire's testimony nor have they attempted to show that these documents were in fact regarded and treated as confidential. Thus, without ever defining the "control group" membership, we can only conclude either that the documents were never confidential and the privilege never attached, or that at the very least they were not actually treated as such and the privilege was lost. Natta v. Hogan, *supra*, 392 F.2d at 693; United States v. Kelsey-Hayes Wheel Co., 15 F.R.D. 461, 465 (E.D.Mich.1954).

III. Has the privilege been waived by defendants because they put the '819 application in issue?

In support of its allegations of fraud against plaintiffs, Babcock & Wilcox filed and relied upon the '819 application as a documentary admission by plaintiff Gorzegno of the knowledge he possessed as an employee of Babcock & Wilcox. However, defendants now contend that the circumstances surrounding the execution and filing of the application are not necessarily, and in this case were not, put in issue. They argue that the '819 application is presented only as an official record of the Patent Office, a notarized document valid on its face.

 Defendants' suggestion that they can introduce a document as evidentiary proof of an admission as to the background of that document and yet preserve a privilege with respect to that background merely because they themselves have not impugned the execution or any other aspect of the document is impersuasive. Fundamental precepts of fairness dictate the opposite conclusion. It would be manifestly unjust to allow the application to be introduced in a vacuum, totally immunized from contextual analysis. The primary issue in this dispute goes to the question of Gorzegno's knowledge at the time of the execution of the application. For defendants to introduce the application as evidence of that knowledge while simultaneously foreclosing any further amplification of its underlying validity unduly prejudices plaintiffs' position. Here the defendants who are the proponents of the document are filling the role of plaintiffs in the underlying action. The policy of disallowing the use of an asserted privilege as both a sword and a shield by a plaintiff in a civil action should apply equally to the attorney-client privilege as it is invoked in this instance. Independent Productions v. Loew's Inc., 22 F.R.D. 266, 277 (S.D.N.Y.1958).

 Moreover, we cannot accept defendants' argument that by virtue of putting a document in evidence without impugning its execution the document's "health" is not also put in issue. In effect defendants became proponents of the inferences that may be drawn from the face of the document and *a fortiori* the status of opponents inures to the plaintiffs. Inherent in this situation are the plaintiffs' rights to rebut those inferences. Those rights would be undermined, if not vitiated, by denying plaintiffs access to the factual foundations of those inferences. Defendants cite no authority asserting that official records of the Patent Office are entitled to an irrebuttable presumption of validity or veracity. The decisive factor in determining whether the attorney-client privilege has been waived in this context is not the technical designation of the particular document but the nature of the purpose for which it is introduced. Jack Winter, Inc. v. Koratran Co., 50 F.R.D. 225, 229 (N.D.Cal.1970); *see also* Honeywell, Inc. v. Piper Aircraft Corp., *supra*, 50 F.R.D. at 120. The primary purpose of the attorney-client privilege is the protection of the confidentiality of attorney-client communications. This is necessary to foster the full and uninhibited communication

of information and ideas between a client and his attorney, an objective deemed essential to afford the client access to the full panoply of his rights under the law. Colton v. United States, 306 F.2d 633, 636 (2d Cir. 1962); 8 Wigmore, *supra,* at § 2291. However, it is clear that neither the Court nor the opposing party impinges upon those rights nor do they abrogate the privilege by demanding access to those attorney-client communications relevant to the issue for which a document is introduced or which is raised by its introduction. In addition, this Court must insure that all of the relevant facts are available for the fair adjudication of a controversy. The options in this case were under the exclusive control of the defendants. They could have determined that their interest in maintaining the secrecy of the background information outweighed the necessity for raising this issue and introducing this document in support of their position. However, these defendants, presumably on the basis of a carefully considered determination, chose the opposite track and consequently are foreclosed from selectively introducing or withholding various items of relevant information. *See* Independent Productions Corp. v. Loew's, Inc., *supra,* 22 F.R.D. at 276–77. Defendants must be deemed to have waived the privilege under these circumstances.

IV. Has the privilege been waived by virtue of the Maguire affidavit?

██ In a related trade secret action in the New Jersey state court defendant Maguire submitted an affidavit on behalf of Babcock & Wilcox which asserted in at least two paragraphs that Maguire was willing and intended to show to Gorzegno the papers now reserved as privileged. The affidavit explicitly refers to certain documents and background information (to wit, a letter dated May 5, 1961) pertaining to the circumstances surrounding the determination of inventorship—the very information sought

to be precluded here. The Special Master ruled that the reference to and adversarial use of this documentary evidence and the affiant's representation of willingness to amplify upon related information served as a waiver of defendants' attorney-client privilege as to those matters. *See, e. g.,* American Optical Corp. v. Medtronic, Inc., 56 F.R.D. 426, 432 (D.C.Mass.1972). Defendants now argue that the revelations of Maguire's affidavit constituted attorney's work product within the meaning of Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and consequently cannot constitute a waiver of attorney-client privilege. The Special Master was clearly correct in rejecting this contention. The preparation of and the actual application for a patent are not done in anticipation of any specific litigation, Colton v. United States, *supra,* 306 F.2d at 640, and consequently defendants are relegated to their original claim of attorney-client privilege. With respect to the circumstances under which that privilege is asserted here, Dean Wigmore has said:

"... A privileged person would seldom be found to waive, if his intention not to abandon could alone control the situation. There is always also the objective consideration that when his conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final." 8 Wigmore, *supra,* § 2327, at 636.

Mr. Maguire should return to his deposition at the earliest convenience of the Special Master and the parties. There should be disclosure without delay by defendants of all documentary information directed by the Special Master.

The motion for legal instructions to the Special Master to reverse his rulings

is denied. The Special Master is directed to proceed in a manner consonant herewith. It is so ordered.

## APPENDIX

### THE SPECIAL MASTER:

Well, I have written out some rough notes of my review and conclusions on this matter and I will attempt to follow my script but I may interpolate from time to time.

There are basically two questions before me. One is the assertion of the attorney-client privilege arising out of the documents identified in Defendants' Exhibit 2, and arising also out of questions being asked Mr. Maguire on the circumstances and facts underlying his preparation of the '819 application and his selection or determination of who the inventors were for that application. The inventors eventually selected and determined by him were Messrs. Gorzegno and Frendberg.

Now, this question of attorney-client privilege with respect to the documents has already been ruled on by me, but yesterday and this morning I entertained some further argument on it in the nature of reargument.

The second question before me is that of attorney work product immunity on production of documents. The alleged work product arises out of the work of Mr. Maguire and others in the B & W patent department in connection with the preparation and prosecution of the '819 patent application. This question had previously been alluded to but was seriously argued before me for the first time yesterday and again this morning.

Before giving my rulings, I will try to outline the essential facts as I understand them.

A. This proceeding is under U. S. Code Title 35, Section 24 in aid of discovery in an inter partes proceeding in the United States Patent Office. It came about through the efforts of the plaintiffs here to develop evidence in support of their rebuttal to the defendants' petition to strike the Gorzegno et al. application in interference for fraud under Rule 56 of the Patent Office Rules of Practice.

B. I was appointed Special Master by Judge Palmieri to preside over plaintiffs' discovery, which is identified as M–8–85 and was initiated by the service of a subpoena duces tecum on Mr. Maguire. That subpoena is in evidence here as Plaintiffs' Exhibit 1. The Commissioner of Patents has extensively outlined the scope of the rebuttal discovery in several opinions, particularly those of May 10th and July 3, 1973.

C. Some of the documents underlying the preparation and prosecution of the '819 application have already been made public. To some extent, this appears to have been initiated by Gorzegno and Foster Wheeler in motions they brought in the interference. I don't think I'm called upon to rule on the propriety of that initial revelation of those documents. I don't think that question is before me. Whether it was proper or not, its propriety appears not to have been contested by Babcock & Wilcox in the interference. No motion to strike the documents apparently was ever made and they were later treated by Babcock & Wilcox as being in the public domain. That took place in the civil action for appropriation of trade secrets brought by Babcock & Wilcox against Foster Wheeler in the state court in New Jersey. And the defendants here responded in that action to a motion by Foster Wheeler for summary judgment by filing, *inter alia*, an affidavit of Mr. Maguire. That affidavit, which is before me, was submitted by Foster Wheeler in connection with the brief, the memorandum of law in support of plaintiffs' application for production of documents.

That affidavit of Mr. Maguire presented some of the correspondence between him and Gorzegno in connection with the '819 patent application. It also contained statements by Maguire which

referred to the preparation and prosecution of the '819 application. Some of those statements I have already put in this record in connection with my earlier rulings on privilege.

I think the most important thing in the Maguire affidavit, with respect to the question I'm called upon to decide, are statements by him that at the time of the preparation of the '819 application and the subsequent affidavit under Rule 131, Mr. Maguire stood ready to inform Gorzegno and Foster Wheeler's attorney, Thomas, completely as to all the circumstances with respect to the preparation of the '819 application. That appears, for example, in Paragraph No. 10 of the affidavit in the statement:

"In obtaining Mr. Gorzegno's signature on Case 3345 . . ."

Parenthetically, that is the number of the Babcock & Wilcox case which became the '819 application.

". . . I made no false or misleading statements or concealment and stood ready to answer any and all questions by him on the case."

A similar statement appears in Paragraph 13 of the affidavit:

"In obtaining Mr. Gorzegno's signature on the Rule 131 affidavit, I made no false or misleading statements or concealment and stood ready to answer any and all questions by him or Mr. Thomas on the affidavit or Case 3345."

Because of those statements, among others, it appears to me that before this action commenced Mr. Maguire or Babcock & Wilcox would have been willing to show Gorzegno the papers that Babcock & Wilcox now objects to producing and would have told him the facts and circumstances now sought to be adduced by the testimony of Mr. Maguire with respect to the inventorship and other matters underlying the '819 application.

These statements I have read from the affidavit fortify my feeling that the facts that are sought to be adduced by plaintiffs here, whether they are attorney-client communications or attorney work product, stood ready to be laid open to Gorzegno at a certain time in the past, and it seems to me that that being the case, there should be no propriety in closing the door on them now.

D. It also appears that defendants have relied to some extent upon statements in Gorzegno's testimony in the interference in support of their petition to strike. Those statements relate to the review by Gorzegno of the '819 application. That was pointed out yesterday by Mr. Austin in reference to Attachment H, Page 4 to the petition to strike.

With respect to the argument made this morning by defendants that whatever may have occurred by reason of the Maguire affidavit was a waiver of attorney work product rather than attorney-client privilege, I am not really impressed with that argument, apart from the apparent reconsideration and change of view by counsel on that subject. I call attention to one statement in Mr. Maguire's affidavit which seems to me to be helpful and rather determinative on that subject, which is in Paragraph No. 9 of the affidavit, the second sentence, which states:

"Determination of inventorship on Case 3345 was partially based on the attached copy of Mr. Gorzegno's letter dated May 5, 1961 (Exhibit 4)."

That seems to me to be a clear statement of an opinion by Mr. Maguire on behalf of his client, based on communications to him by the client, and having alluded to that opinion in his affidavit, having relied upon it and having stated that the facts underlying it would have been available to Mr. Gorzegno at some earlier point in time, it seems to me that the waiver of the attorney-client privilege with respect to those transactions had clearly been waived.

As to the law in this matter, I have reviewed the decisions counsel called to my attention yesterday and I have been guided by them as well as I can be and by the very able arguments that counsel

on both sides have made, and I now will state my rulings and the legal bases that I consider to underlie them.

Number One: As to the documents previously ruled to be produced, my previous ruling stands. My principal reason for this ruling, which is similar to what I had stated before, that is, the defendants cannot rely on part of the facts and some of the documents to support their petition to strike and to rely upon those matters to advance their cause in other litigation, to wit, the New Jersey case, and then withhold another part of those documents and facts in this proceeding. I think this basic doctrine of law is clearly applicable here. In addition to the cases previously referred to, particularly the ruling of Judge Doyle in the Koratron case to which I referred in my previous ruling, I am impressed by the statements of the Court in Independent Productions v. Loew's, Inc., 22 F.R. D. 266. That was a decision of the Southern District of New York, 1958. I don't know whether you cited that case or not, Mr. Puffer. Do you remember?

MR. PUFFER: I think I did, sir.

THE SPECIAL MASTER: I ran onto a quotation from it in the brief in the Koratron case on the question of duress.

In that case, in ruling that there was no privilege or that there was a waiver of privilege, the Court said:

"The plaintiffs in this civil action have initiated the action and forced defendants into court. If plaintiffs had not brought the action they would not have been called upon to testify. Even now, plaintiffs need not testify if they discontinue the action. They have freedom and reasonable choice of action. They cannot use this asserted privilege as both a sword and a shield. Defendants ought not to be denied a possible defense because plaintiffs seek to invoke an alleged privilege."

I think that is a matter of basic principle that underlies all the situation here and it seems to me that the law I referred to is entirely applicable here.

It also seems to me that in the Commissioner of Patents' decision of July 3, 1973, the passage on Page 4, there seems to me to be an apparent recognition of this legal principle. On Page 4 of that opinion, the Commissioner said, and this has been read before, but I will read it so it will be in context with my own statements:

"It might advance this cause to a sound conclusion if Mr. Maguire's full testimony be permitted, so that he may explain the bases for his conclusions of inventorship and dates of invention as embodied in the 470,819 application and Rule 131 affidavit which he prepared and asked Mr. Gorzegno to sign."

That seems to me to be a recognition by the Commissioner of the same kind of position taken by defendants here that I have referred to in my application of the law. The statement by the Commissioner I have just read follows some quotations of the colloquy between counsel and Judge Palmieri.

This ruling I have just reiterated will also apply to questions which have been asked or may be asked Mr. Maguire with respect to facts and circumstances as to his preparation of the '819 application, his prosecution of it and the inventorship of that application. However, the ruling will not extend to his opinions on patentability which I have have already excluded insofar as they appeared in the documents provided me *in camera*. There may be other occasions in the documents submitted to me yesterday in connection with Defendants' Exhibits 5 and 6 where the same split of admissibility will apply.

Point Number Two, as to the work product contentions: I think I clearly recognize that there is a distinction between the work product immunity and the attorney-client privilege and although factually the communications with respect to those matters may overlap and they seem to overlap very con-

siderably in this case, I am impressed by the law cited by Mr. Puffer this morning and yesterday to the effect that the work product immunity does not apply to attorney's work which was not in anticipation of prospective identifiable litigation. The suggestion of counsel for defendant that any patent application is done in anticipation of litigation does not, in my opinion, stand up. There are a great many patents that live their entire lives out without being litigated and are fully respected. Merely applying for a patent is not anticipation of any specific litigation on it either while the application is pending or after the patent is issued. The decision by the 2nd Circuit in Colton v. United States, 306 Fed. 2nd 633 at Page 640 contains a quite clear application of that rule, and I think is binding on me here.

Other cases Mr. Puffer referred to this morning seem to be in accord.

Counsel for defendants referred yesterday to another decision by Judge Doyle in the Winter v. Koratron case where certain matters were classed as work product and held to be privileged without any reference to this principle of pending or anticipated litigation. However, I don't think that dicta, which I feel that it is in the Koratron case, violates the overriding principle that I have referred to in the Colton case. My own knowledge of the facts and circumstances of the Koratron case leads me to believe that Judge Doyle may very well have been referring to documents that were prepared in connection with, or in anticipation of litigation. The litigation in that case went far back of the case on trial before Judge Doyle and that may explain the apparent scope of his statement.

In the Detroit Screwmatic case cited by counsel for the defendants, on Page 78 of 49 F.R.D., the Court excluded one item, so-called last item, as attorney's work product because it was prepared by counsel after the commencement of that suit. Certain other documents of a prior date were withheld from discovery by the Court but the reason for it appears to have been the failure of the plaintiff there to demonstrate good cause for their production, rather than that they constituted work product within the rule of the Hickman v. Taylor case. I refer particularly to the first sentence of the second paragraph, right-hand column, Page 78, which states:

"As to the remaining documents, plaintiff has failed to demonstrate good cause for their production."

Accordingly, I rule that the documents here in question because of asserted immunity under the work product doctrine, are to be produced.