On July 10, 1975 the court issued the following order:
Before SkeltoN, Judge, Presiding, KtjNzxg, and BeNNett, Judges.
“Pursuant to Buie 53(c) (2) (i) plaintiff seeks review of an order entered January 23, 1975, by the trial judge denying reconsideration of his order of October 29, 1974. Plaintiff also contests the trial judge’s allowance of defendant’s motion for production of documents. The trial judge has, pursuant to the rule, certified his order for appellate review on the basis that it involves an issue of controlling importance.
“Plaintiff brought suit to recover alleged overpayment of federal income taxes and interest thereon for its taxable year ended May 1, 1965. In broad terms the central issue of the case is whether or not Ampex World Operations, S.A. (awosa) was a controlled foreign corporation within the meaning o'f section 957 of the Internal Bevenue Code of 1954, as amended. A foreign corporation is a controlled corporation if more than 50 percent of the total combined voting power of all classes of its stock entitled to vote is held by an American corporation or person. In 1964 plaintiff formed the new affiliate awosa with two classes of stock — common and preferred — each of which possessed 50 percent of the nominal voting power. The preferred stock was sold to foreigners. The parties stipulated that the purpose of the formation of awosa and issuance of its preferred stock to non-United States shareholders was to avoid the classification of awosa as a controlled foreign corporation.
“The Government hopes to prove that the preferred stock was sold to foreigners who would either agree to vote their shares as designated by plaintiff, or who for other reasons *1015 could be depended upon to act in conformity with plaintiff’s wishes. Treas. Eeg. § 1.957-1 (b) (2) (1965) denies effect to arrangements which shift nominal voting power away from United States shareholders, where, in reality, the substantive voting power is retained. In addition, the Eegulations provide that where a foreign corporation has two classes of stock, one of which is held by an American corporation or person, the voting power of the other will be disregarded if three requirements are met, one being that foreign shareholders do not exercise their voting rights independently.
“Defendant seeks production, inter alia, of any legal or advisory opinions which discuss methods by which plaintiff could conduct its foreign operations through a so-called ‘noncontrolled foreign corporation’ without relinquishing actual or effective control over the latter’s affairs. Plaintiff asserts that any such opinions are privileged from discovery under the attorney-client privilege. The trial judge ordered that plaintiff produce the opinions or have its suit dismissed. He did so in the belief that ‘fundamental notions of fairness or of waiver, or both’ required production of the documents otherwise protected from disclosure by the attorney-client privilege, because the materials were essential to the Government’s defense of the suit. We disagree.
“It is true that the attorney-client privilege is not absolute; it can be waived. 4 Moore’s Federal Practice ¶26.60[2] (2d ed. 1974). The mere bringing of a suit does not ordinarily waive the privilege. There are situations, however, where the attorney has participated in the acts which are the essence of the controversy and where it would be unfair to allow the plaintiff to introduce only selective evidence and bar the defendant from inquiring as to other relevant circumstances involved in the same transaction. For instance, it has been held that a party may not reasonably claim that he relied on advice of counsel and then shut his adversary off from finding what that advice was. Trans World Airlines, Inc. v. Hughes, 332 F. 2d 602, 615 (2d Cir. 1964), cert. dismissed, 380 U.S. 248, 249 (1965). And cf. also Malco Mfg. Co. v. Elco Corp., 307 F. Supp. 1177 (E.D. Pa. 1969); Gorzegno v. Maguire, 62 F.R.D. 617, 621-22 (S.D. N.Y. 1973); Jack Winter, Inc. v. Koratron Co., 50 F.R.D. 225, 229 (N.D. Cal. *1016 1970). To do so is to use the privilege as both sword and shield. That is impermissible.
“In the instant case defendant needs to prove that the foreign shareholders do not exercise their voting rights independently. Defendant has access to the various officers and shareholders of the firm and may discover all nonprivileged documents which are relevant. Communications made in confidence between plaintiff and counsel are not the essence of the controversy and are not essential to the defense. That the attorney-client communications may be relevant we assume, but this is not the criterion for overuling the privilege. If it were the sole criterion, there would be no privilege. Good cause, required by Rule 71(a) (2) is not shown here.
“Plaintiff has not waived its attorney-client privilege. It does not 'base its claim on the contents of communications with its attorneys, and it has never made the advice of its attorneys part of the case. To the extent that the trial judge allowed production of all correspondence, notes, memoranda and recommendations concerning the effect of the newly enacted subpart P provisions of the Revenue Act of 1962 on plaintiff, and ways or means of modifying plaintiff’s foreign operations to minimize United States taxation, other than such papers protected by the attorney-client privilege, he was correct in doing so. The agreements, understandings and actions of the shareholders and officers of the companies are the operative facts, not their tax counsel’s opinions in this case.
“The attorney-client privilege fosters the full and uninhibited communication of information and ideas between a client and his attorney. This is essential to afford the client access to the full panoply of his rights under the law. Colton v. United States, 306 F. 2d 633, 636 (2d Cir. 1962), cert. denied, 371 U.S. 951 (1963); Gorzegno v. Maguire, supra; 8 Wigmore, EvideNOe § 2291 (McNaughton Rev. 1961). Privilege is interpreted as it is ‘known and understood in the law of evidence.’ Benson v. United States, 133 Ct. Cl. 11, 21, 130 F. Supp. 347, 353 (1955); cf. Ct. Cl. Rule 74 and Fed. R. Civ. P. 26(b) and 34; Kaiser Alum. & Chem. Corp. v. United States, 141 Ct. Cl. 38, 45, 157 F. Supp. 939, 944 (1958). Privi *1017 lege is also defined by tbe Federal Rules oe EvideNce, Rule 501, as ‘governed by tbe principles of tbe common law as they may be interpreted by tbe courts of the United States in the light of reason and experience.’ Wigmore' states that tbe attorney-client privilege is the oldest of all common-law privileges for confidential communication. 8 Wigmore, EvideNce §2291 (McNaughton Rev. 1961). Tbe Supreme Court lias recognized that public policy supports confidential communications between attorney and client. United States v. Louisville & Nashville R.R. Co., 236 U.S. 318, 336 (1915). NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149, 154 (1975). It is a rare case where the privilege will be deemed waived. This is not such a case.
“it is therefore ordered that the order of the trial judge allowing defendant’s motion for production of documents to the extent that they are attorney-client communications and his order refusing to reconsider same and holding that plaintiff may invoke the attorney-client privilege only at the price of dismissing its suit are, on review pursuant to request of plaintiff and certification of the trial judge, reversed.”