John H. BANKS, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

Eugene J. Frett, Individually and as Trustee of the Victor J. Horvath and Frances B. Horvath Trust, Plaintiff,

v.

The United States, Defendant.

Nos. 99–4451L c/w 99–4452L, 99–4453L, 99–4454L, 99–4455L, 99–4456L, 99–4457L, 99–4458L, 99–4459L, 99–44510L, 99–44511L, 99–044512L, 00–365L, 00–379L, 00–380L, 00–381L, 00–382L, 00–383L, 00–384L, 00–385L, 00–386L, 00–387L, 00–388L, 00–389L, 00–390L, 00–391L, 00–392L, 00–393L, 00–394L, 00–395L, 00–396L, 00–398L, 00–399L, 00–400L, 00–401L, 05–1353L, 05–1381L, 06–72L.

United States Court of Federal Claims.

Dec. 15, 2009.

John B. Ehret, Stevensville, MI, for certain plaintiffs in No. 99–4451L, Mark E. Christensen, Chicago, IL, for certain plaintiffs in No. 99–4451L. Eugene J. Frett, Chicago, IL, pro se in No. 05–1353L.

Terry M. Petrie, with whom was John C. Cruden, Acting Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Denver, CO, for defendant. Gary W. Segrest and Don C. Erwin, Office of Counsel, United States Army Corps of Engineers, Detroit, MI, of counsel.

### ORDER

HEWITT, Chief Judge.

Before the court are Defendant's Motion to Compel (Defendant's Motion or Def.'s Mot.) with attached exhibits (Def.'s Ex. or Def.'s Exs.) filed on September 16, 2009, dkt. no. 332; Plaintiffs' Response to Defendant's Motion to Compel (Pls.' Resp.) filed on October 2, 2009, dkt. no. 341; and Defendant's Reply in Support of Defendant's Motion to Compel (Def.'s Reply) filed on October 9, 2009, dkt. no. 343. Defendant's Motion seeks to compel plaintiffs to provide further answers to Interrogatories 4, 5 and 6 of Defendant's First Set of Interrogatories and Request for Production of Documents. Def.'s Mot. 1.[1] These interrogatories ask plaintiffs for the location of boreholes, test specifications and the scope of work for certain tests conducted on or near plaintiffs' property and the results of any such tests. Def.'s Mot. 3–5. The Motion also requests "each and every document which either supports [p]laintiffs' response or was identified in response to … interrogatories [4, 5 and 6]." Def.'s Mot. 5. Defendant received no information from plaintiffs in response to Interrogatories 4 and 6, and received only partial responses to Interrogatory 5. *Id.* Plaintiffs claim privilege for the

---

1. The court has summarized defendant's Interrogatories 4, 5 and 6 as well as plaintiffs' responses as Appendix A to this Order pursuant to the recitation of the interrogatories and responses in defendant's Motion. Def.'s Mot. 3–5.

documents containing responsive information (Documents). Plaintiffs' claim of privilege is asserted in "Plaintiffs' Vaughn Index/Privilege Log" (Index or Pls.' Index) attached to the Documents provided to the court for in camera review. Plaintiffs object pursuant to the fact work product doctrine under Rules of the Court of Federal Claims (RCFC) 26(b)(3)(A) and the consulting expert privilege under RCFC 26(b)(4). Pls.' Resp. 3–4, 9–10. Further, plaintiffs classify defendant's interrogatories as premature requests for expert discovery based on RCFC 26(b)(4). Pls.' Resp. 9.

## I. Legal Framework

■ Plaintiffs base their claim for protection of the Documents on RCFC 26(b)(3) and RCFC 26(b)(4)(B). RCFC 26(b)(3)(A) governs the required provision of documents and tangible things to the opposing party and limits the type of material a party may discover when the information is created or prepared in anticipation of litigation. Subsections (i) and (ii) of RCFC 26(b)(3)(A) provide two exceptions to the prohibition against discovery of documents prepared in anticipation of litigation. RCFC 26(b)(3)(A)(i)-(ii). A party must satisfy both subsections in order to compel production. Pursuant to RCFC 26(b)(3)(A)(i), the party seeking discovery must establish, first, that the evidence is relevant under RCFC 26(b)(1). Rule 26(b)(1) allows a party access to "any non-privileged matter that is relevant to any party's claim or defense." RCFC 26(b)(3)(A)(i). In addition, the party seeking discovery must show that it cannot, without undue hardship, acquire the information contained in the documents from another source. RCFC 26(b)(3)(A)(ii); *see also In re Seagate Tech., LLC (Seagate)*, 497 F.3d 1360, 1375 (Fed.Cir. 2007) (en banc) (describing work product

protection under the Federal Rules of Civil Procedure (Fed.R.Civ.P. or FRCP) Rule 26(b)(3), the federal rule paralleling RCFC 26(b)(3), as qualified and surmountable only by demonstration of need and undue hardship). *Seagate* and other relevant case law identify two tiers of protection afforded work product. Fact work product is discoverable upon demonstration of need and hardship, while opinion work product is discoverable only in rare circumstances. *Seagate*, 497 F.3d at 1378; *see Pacific Gas & Elec. Co. v. United States (PG & E)*, 69 Fed.Cl. 784, 789–90 (2006). Plaintiffs argue that defendant has failed to demonstrate that the Documents should be produced under 26(b)(3)(A).[2] Pls.' Resp. 7–9.

Discovery under RCFC 26(b)(3)(A) is also limited by RCFC 26(b)(4)(B). RCFC 26(b)(4)(B) provides:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only: (i) as provided in RCFC 35(b)[3] or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

RCFC 26(b)(4)(B). Plaintiffs assert that the Documents are protected under 26(b)(4)(B) because the results were prepared by expert(s) who are not expected to testify at trial. Pls.' Index 3.

Because plaintiffs have stated that the documents for which they claim privilege were prepared by consulting experts not expected to be called as witnesses at trial, RCFC

---

**2.** Rules of the Court of Federal Claims (RCFC) 26(b)(3)(A), titled "Documents and Tangible Things," provides as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to RCFC 26(b)(4), those materials may be discovered if:

> (i) they are otherwise discoverable under RCFC 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> RCFC 26(b)(3)(A).

**3.** RCFC 35(b) addresses physical and mental examination of a person at the request of a party, an issue not relevant here. *See* RCFC 35(b).

26(b)(4) applies to the dispute over production of the Documents. Pls.' Index 3–4 (citing RCFC 26(b)(4)(B), "the consulting expert privilege," as governing the privilege claimed for the Documents). In order for the court to find that defendant is entitled to access the Documents, it must find that defendant falls within the exception articulated in subsection (ii) of RCFC 26(b)(4)(B) which requires that defendant demonstrate that "exceptional circumstances" exist which make it "impracticable" for it to gather information on the same topic by its own means. *See PG & E,* 69 Fed.Cl. at 789–90 (explaining that core or opinion work product receives a high level of protection which renders it discoverable only when rare and exceptional circumstances are demonstrated).

## II. Discussion

### A. The Broad Scope of Relevant Discovery

The work product doctrine is "designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute." *Seagate,* 497 F.3d at 1375 (citing *In re Martin Marietta Corp.,* 856 F.2d 619, 624 (4th Cir. 1988)). Defendant relies on *Hickman v. Taylor (Hickman),* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), in order to support the proposition that the rules of discovery "are to be accorded a broad and liberal treatment" and to support mutual exchange of knowledge between the parties. Def.'s Mot. 6 (quoting *Hickman,* 329 U.S. at 507, 67 S.Ct. 385). *Hickman,* however, provides the framework for analyzing claims for protection of an attorney's intangible work product. *Hickman,* 329 U.S. at 510, 67 S.Ct. 385 (finding "written statements, private memoranda and personal recollections" of the party's counsel "outside the arena of discovery"). By contrast, RCFC 26(b)(3), which mirrors the language of FRCP 26(b)(3), "establishes the basis for the application of the work product doctrine to 'documents and tangible things.'" *Am. Fed. Bank, FSB v. United States (Am. Fed. Bank),* 60 Fed.Cl. 493, 497 (2004) (citing *Alexander v. FBI,* 192 F.R.D.

12, 17 (D.D.C.2000) (interpreting the identical to RCFC 26(b)(3)) terms of Fed.R.Civ.P. 26(b)(3)); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2024, at 337–38 (2d ed.1994); 6 James W. Moore, et al., *Moore's Federal Practice* § 26.70[2][c] (3d ed.2004).

■ The court agrees with defendant's general point that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …[,]" RCFC 26(b)(1), and that relevance is broadly construed. *See* Def.'s Mot. 6 (citing *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1024 (Fed.Cir. 1986)); see *AAB Joint Venture v. United States,* 75 Fed.Cl. 432, 438–39 (2007) (citing *Katz v. Batavia Marine & Sporting Supplies, Inc.,* 984 F.2d 422, 424 (Fed.Cir.1993)). The information requested in Interrogatories 4, 5 and 6 is relevant to defendant's case in light of the fact that shoreline composition is at issue in this litigation. *See Banks v. United States,* 78 Fed.Cl. 603, 621–22 (2007) (discussing the relevance of the composition of the lake bed).

### B. Purpose and Timing of Tests

The purpose for which the tests were conducted and the time at which the tests were conducted in relation to the date of trial are important to the resolution of defendant's Motion to Compel under RCFC 26(b)(3)(A) and 26(b)(4)(B). Defendant asserts that plaintiffs have failed to establish that the expert(s) conducting the testing and analysis were hired for the purposes of trial preparation as required for plaintiffs' Documents to be protected from discovery by either RCFC 26(b)(3)(A) or RCFC 26(b)(4)(B). Def.'s Mot. 7. According to defendant, "[b]y no later than March 13, 2008, [p]laintiffs had apparently applied for a 'permit to drill for soil samples.'" Def.'s Mot. 3, (citing Def.'s Ex. 5). On April 24, 2008 plaintiffs made their application to "take samples in Lake Michigan at 47 locations along the shoreline between Hanley Road North at St. Joseph to Wishart Road at Stevensville, Michigan." Def.'s Mot. 3 (citing Def.'s Ex. 6). The testing was "authorized by nationwide permit" pursuant to the determination of the Michigan Depart-

ment of Environmental Quality. *Id.* Defendant argues that plaintiffs have failed to establish eligibility under RCFC(b)(4)(B) or that the expert(s) retained for purposes of compiling the Documents' data reports were "retained only for trial preparation." Def.'s Mot. 7. Defendant notes that if plaintiffs do not establish that the expert(s) were retained for trial preparation, then they have engaged in disfavored "sword-and-shield litigation tactics." *Id.* (citing *Ampex Corp. v. United States (Ampex)*, 1975 WL 3230, 207 Ct.Cl. 1014, 1015–16 (1975)). *Ampex* noted that a party may not claim that it had "relied on advice of counsel" and simultaneously refuse discovery on what the advice was. *Id.* at 1015 (citing *Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 615 (2d Cir.1964)).

■ Plaintiffs argue that the Documents requested by defendant were in fact prepared in preparation for litigation. Pls.' Resp. 7–8. In order for the Documents to be considered as prepared in anticipation of litigation, the court must find that the Documents would not have been prepared but for the litigation. *Willingham v. Ashcroft*, 228 F.R.D. 1, 4 (D.D.C.2005); *accord United States v. Adlman*, 134 F.3d 1194, 1202–03 (2d Cir.1998) (explaining that documents not prepared in anticipation of litigation "would have been created in essentially similar form irrespective of the litigation" instead of " 'because of' actual or impending litigation"). Under the FRCP a five-factor test has been used to determine whether a document was prepared in anticipation of litigation. *See United States v. El Paso*, 682 F.2d 530, 543 (5th Cir.1982) (citing *Abel Inv. Co. v. United States (Abel)*, 53 F.R.D. 485, 489–90 (D.Neb. 1971)). Abel dealt with a motion to compel filed by plaintiff, a Nebraska corporation, in a case against the Internal Revenue Service for reimbursement of overpaid taxes. *Id.* at 489. Plaintiff sought to compel reports prepared by IRS officials responsible for deciding whether refunds were warranted. *Id.* The *Abel* court considered the following factors: (1) whether or not the requested documents were "routinely prepared in each case and before the filing of any lawsuit" (i.e., in the course of business), (2) if the materials were prepared at the direction of an attorney, (3) if the documents were impartial or

adversarial in nature, (4) whether the documents addressed the opposing party's theory of the case to be used at trial and (5) whether the documents were the result of the opposing party's own investigative work or if they contained evidence which the requesting party produced. *Id.*

■ The five-factor test as articulated in *Abel* supports plaintiffs' argument that their Documents qualify for protection from discovery. First, the court finds that the documents were not prepared by plaintiffs for a reason other than litigation. There is no apparent reason and defendant has suggested no reason, such as an outside business or other non-litigation motivation, for plaintiffs to have drilled for and collected soil samples. The court does not perceive, nor has defendant identified any apparent reason, why plaintiffs would employ experts to create plans, sketches and drawings aside from this litigation. The court has no reason to doubt plaintiffs' stated litigation-based motivation for testing. *See* Pls.' Resp. 7. Second, plaintiffs state that the Documents were prepared at the direction of plaintiffs' counsel, John Ehret, thereby satisfying the second factor of the *Abel* test. *Id.* The court has no basis to doubt that plaintiffs' attorney(s) directed that the tests be conducted and nothing has been presented by defendant to challenge this assertion. The third *Abel* factor considers whether the Documents are impartial or adversarial in nature. The Documents were created at the direction of counsel in anticipation of litigation. While the content of the Documents may or may not be "impartial," their purpose is "adversarial." Plaintiffs also satisfy the fourth Abel factor because the Documents are directly related to the development of plaintiffs' theory of the case. The fifth *Abel* factor asks whether the Documents include investigative evidence submitted by the requesting party. The Documents do not appear to contain any evidence known to have been provided by defendant. *See* Pls.' Resp. 8. The Documents qualify for protection under the *Abel* test.

■ In order for defendant to obtain discovery of the Documents notwithstanding the conclusion that they were prepared in antici-

pation of litigation, it must demonstrate that it is entitled to the benefit of the "substantial need" and "undue hardship" exception of RCFC 26(b)(3)(A)(ii). Defendant argues that it would suffer undue hardship if denied access to the Documents. Def.'s Mot. 7 ("Defendant has shown a substantial need and undue hardship that warrants provision of the information . . . ."). In defining what that hardship would be, defendant claims that the information sought is important to its experts who "need time to digest the information and determine what, if any, information is needed before [p]laintiffs' expert disclosures on November 2, 2009." *Id.* Defendant does not further explain the specific hardship it would face either by a failure to obtain the Documents prior to a particular date or if it were required to conduct its own tests. Although the court can assume that some costs would be associated with the government's conducting of its own tests and sampling, this type of financial hardship would not necessarily satisfy RCFC 26(b)(3)(A)(ii). As plaintiffs point out, they do not have an exclusive right to drill or request to drill soil samples near the relevant properties. Pls.' Resp. 8. The sampled areas are just as available to defendant as to plaintiffs. *See Kallas v. Carnival Corp.,* No. 06–20115—CIV–MORENO/TORRES, 2008 WL 2222152, at *4, 2008 U.S. Dist. LEXIS 42299, at *13 (S.D.Fla. May 27, 2008) (holding that defendant could not demonstrate substantial need and undue hardship in its supplemental request for produc-

tion because the requested information was equally available to both parties). Defendant fails to articulate a reason why it could not conduct its own drilling and sampling—especially given the fact that is in charge of distributing permits for such activity. Pls.' Resp. 8–9. The exception allowed under subsection (ii) of RCFC 26(b)(3)(A) for "substantial need . . . [and] undue hardship" does not apply to defendant.

■ Even if defendant could meet the requirements of RCFC 26(b)(3)(A)(ii) by demonstrating both substantial need and undue hardship, plaintiffs maintain that the Documents constitute opinion work product in addition to fact work product and therefore are not discoverable. Pls.' Index 4. The difference between discovery of factual information and mental process work product (e.g., plans, strategies, tactics, mental impressions and opinions) is that factual information can be discoverable based on a showing of "substantial need . . . [and] undue hardship," while mental process work product is afforded even greater, nearly absolute, protection under applicable case law. *Seagate,* 497 F.3d at 1375.[4]

Disclosures under RCFC 26(b)(3)(A) are also subject to RCFC 26(b)(4)(B), which governs an expert employed only for trial preparation and permits discovery only upon a showing of "exceptional" circumstances. *See* RCFC 26(b)(4)(B). Plaintiffs have represented that the Documents were "generated

---

**4.** Defendant relies on *Sparton Corp. v. United States (Sparton),* 77 Fed.Cl. 10 (2007), and *Ark. Game & Fish Comm'n (Ark. Game),* 74 Fed.Cl. 426 (2006), to support its argument for discovery of the Documents as fact work product. Def.'s Mot. 6–7. Defendant is correct in pointing out that the court distinguished between fact discovery and expert discovery in its March 3, 2008 order. *See* Def.'s Mot. 7; Order, filed March 3, 2008, dkt. no. 288, at 3 ¶ 2 (establishing separate fact discovery and expert discovery deadlines for Shoreline Composition and the Ordinary High Water Mark). However, both cases are readily distinguishable from this case. In *Arkansas Game,* defendant's motion to compel was directed to acquiring permission to physically enter plaintiff's land in order to conduct testing rather than, as here, gaining access to the factual results of tests already conducted by a non-testifying expert. *See Ark. Game,* 74 Fed.Cl. at 428–29. *Sparton* is distinguishable in that the *Sparton* plaintiff brought the Motion to Compel after the

close of fact discovery. *See Sparton,* 77 Fed.Cl. at 14–15. Further, the *Sparton* court found that the Navy's raw data regarding sonobuoys, sonar devices used to detect underwater objects, was fact discovery. *Id.* However, in that case data was in the exclusive possession of the Navy and was not prepared strictly in anticipation of litigation. *See id.* at 11–12, 15. Therefore, unlike the Documents as to which plaintiffs are asserting privilege here, the *Sparton* sonobuoy data would not have been properly analyzed under the Rules of the Court of Federal Claims (RCFC) 26(b)(3)(A) or 26(b)(4)(B) as documents prepared "in anticipation of litigation." The court agrees with defendant that there is a difference between fact discovery addressed by RCFC 34(a) and expert discovery covered by RCFC 26(b) as recognized by the United States Court of Federal Claims in *Sparton.* See *Sparton,* 77 Fed. Cl. at 14–15 (citing *Ark. Game,* 74 Fed.Cl. at 429–30). But these cases do not guide the court to a resolution of the case before it.

solely for the instant litigation by a consulting expert." Pls.' Index 5 (emphasis omitted). Further, plaintiffs observe that defendant has not provided sufficient evidence of hardship in order to overcome the burden of RCFC 26(b)(3)(A)(ii), much less the "exceptional circumstances" required by RCFC 26(b)(4)(B)(ii). *Id.* at 4–5, 7–9. The court agrees.

Under applicable case law, the analyses contained in the Documents prepared by plaintiffs' expert(s) are not discoverable. The raw, unanalyzed data could be discoverable if the court agreed that defendant has demonstrated "substantial need" and "undue hardship" as required by RCFC 26(b)(3)(A)(ii). If the court had found that defendant had demonstrated "substantial need" and "undue hardship" in this case, the court could be required to sever the opinion and analysis of the consulting expert(s) from any discoverable factual information.

■ The court is proceeding based on its view that the Documents are properly within the protection of both RCFC 26(b)(3)(A) and RCFC 26(b)(4)(B), based on the apparent absence of "substantial need" and "undue hardship" or "exceptional circumstances" that could allow defendant access to these materials. The court has in mind defendant's argument regarding the danger of "sword-and-shield litigation tactics" with respect to work product. Def.'s Mot. 7; Def.'s Reply 2, n. 2. As the United States Court of Appeals for the Federal Circuit stated in *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1302 (Fed.Cir.2006):

> We recognize that the line between "factual" work product and "opinion" work product is not always distinct. . . . When faced with the distinction between where that line lies . . . [a] court should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product.

*In re EchoStar Commc'ns Corp.*, 448 F.3d at 1302. With this in mind, the court called a telephonic status conference between the parties on Thursday, December 10, 2009 at 2:00 p.m. EST. Plaintiffs' counsel stated that plaintiffs would not use at trial any of the evidence as to which privilege had been claimed in their Vaughn Index nor would it call as witnesses the expert(s) employed by plaintiffs to conduct the tests recorded in the Documents. The court advised plaintiffs that any use at trial by plaintiffs of any portion of the Documents as to which privilege has been claimed could result in the admission of all of the evidence as to which privilege has been claimed.

Defendant's Motion is DENIED.

IT IS SO ORDERED.

## APPENDIX A

### INTERROGATORY NO. 4

Identify all documents, to include, but [not] limited to, plans or sketches or drawings that show the *locations* of all boreholes, cores or any other form of a test, to include, but not limited to, geotechnical or geological or geophysical, planned by or relied upon by the [p]laintiffs in conjunction with this litigation. This request includes those plans, sketches or drawings for those tests planned by or relied upon by [p]laintiffs, whether the testing has occurred or not. (Emphasis original).

ANSWER: Objection. The information sought seeks expert discovery disclosures, which are not subject to discovery at this time. Plaintiffs further object to Interrogatory number 4 as it seeks information protected by the work product privilege.

### INTERROGATORY NO. 5

Identify all documents that refer to or provide the *specifications, terms or reference, and/or scopes of work for any tests,* to include, but not limited to, geotechnical or geological or geophysical, planned by or relied upon by the [p]laintiffs in conjunction with this litigation. This request includes those specifications, terms or reference, and/or scopes of work for those tests planned by or relied upon by [p]laintiffs, whether the testing has occurred or not. (Emphasis original).

ANSWER: Plaintiffs object to Interrogatory number 5 as it is vague. Notwithstanding the objection [p]laintiffs [a]nswer that [the] American Society for Testing Materials

("ASTM") 422 tests will be relied upon in part to determine graduation of sand, silt or clay and on loss ignition (LOI) to determine organic content. ASTM is a multiple screen test where non pass through sediment, which is retained on the screen[s] is weighed to determine the percentage of that size compared to the overall sample.

*INTERROGATORY NO. 6*

Identify all documents that refer to or describe the *results* of any tests, to include, but not limited to, geotechnical or geological or geophysical, planned by or relied upon by the [p]laintiffs in conjunction with this litigation. This request specifically includes, but is not limited to those documents that refer to or describe the results for boreholes, cores, shallow seismic, and/or ground penetrating radar. (Emphasis original).

ANSWER: See [p]laintiffs' Answer to Interrogatory number 5. Def.'s Mot. 3–5.