392 F.2d 686
 157 U.S.P.Q. 183
 Giulio NATTA, Piero Pino, Giorgia Mazzanti and Montecatini
Societa Generale Per L'Industria Mineraria e
Chimica (Now Montecatini Edison,
S.p.a.), Appellants,
v.
John Paul HOGAN, Robert L. Banks and Phillips Petroleum
Company, Appellees.
John Paul HOGAN, Robert L. Banks and Phillips Petroleum
Company, Appellants,
v.
Giulio NATTA, Piero Pino, Giorgia Mazzanti and Montecatini
Societa Generale Per L'Industria Mineraria e
Chimica (Now Montecatini Edison,
S.p.a.), Appellees.
 Nos. 9694, 9695.
 United States Court of Appeals Tenth Circuit.
 March 21, 1968.
 
 Richard B. McDermott, Tulsa, Okl., and L. Malcolm Oberlin, Bartlesville, Okl. (Boesche, McDermott & Eskridge, Tulsa, Okl., were with them on the brief), for appellants in 9695 and appellees in 9694.
 Edward S. Irons, Washington, D.C. (Garrett Logan, of Martin, Logan, Moyers, Martin & Conway, Tulsa, Okl., and Mary Helen Sears, Washington, D.C., were with him on the brief), for appellants in 9694 and appellees in 9695.
 Before BREITENSTEIN, SETH and HICKEY, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The issues here presented relate to discovery and production of documents under Rule 34, F.R.Civ.P., in connection with interference proceedings in the Patent Office. The district court granted limited discovery and the contesting groups have each appealed.
 
 
 2
 On one side are Natta, Pino, and Mazzanti, and their assignee Montecatini. This group will be referred to as Montecatini. On the other, are Hogan, Banks, and their assignee Phillips Petroleum Company. This group will be referred to as Phillips.
 
 
 3
 The interference proceedings present the question of which party has the earliest patent date. After receiving an Italian patent, Montecatini applied for a patent in the United States. By virtue of 35 U.S.C. 104 and 119, it may not establish a date ealier than June 8, 1954, the date of its Italian patent application. Three groups contest the priority of the Montecatini claim. In the order of their assigned seniority they are E. I. duPont de Nemours & Co., Standard Oil Company of Indiana, and Phillips, all of whom hold under assignments and, under Patent Office practice, are referred to as junior parties. The junior parties have the burden of establishing by a preponderance of the evidence a date before that of Montecatini. Each junior party in turn submits its evidence and then the senior party, Montecatini, presents its rebuttal. The evidence of the juniors has been completed. In preparation for rebuttal Montecatini sought Rule 34 discovery under the permission of 35 U.S.C. 24. An appropriate proceeding was brought in the United States District Court for the District of Delaware against duPont, in the Northern District of Illinois against Standard, and in the Northern District of Oklahoma against Phillips. In the duPont proceedings discovery was allowed and the Court of Appeals for the Third Circuit affirmed. See In re Natta, 3 Cir., 388 F.2d 215. In the Standard proceedings, the district court denied discovery and the Court of Appeals for the Seventh Circuit reversed. See Natta v. Zletz, 7 Cir., 379 F.2d 615. We are concerned with the Phillips proceedings where the district court granted limited discovery. In the appeals before us, several questions are raised which were not mentioned in the decisions affecting duPont and Standard.
 
 
 4
 The first question is the appealability of the district court order. Because that order pleases none of the contestants, the parties are in agreement that it is appealable. The rule that jurisdiction is not conferred by consent makes it necessary that we make our own determination. The question is whether the order of the district court, styled 'Final Order to Produce,' is a final judgment from which an appeal will lie under 28 U.S.C. 1291.
 
 
 5
 An order for the production of documents is not ordinarily appealable.[1] In Covey Oil Co. v. Continental Oil Co., 10 Cir., 340 F.2d 993, we recognized an exception where the order is collateral, fairly separable from the main litigation, and relates to a non-party who shows irreparable injury. In Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686, the Court held that an order to testify and produce documents in connection with an antitrust proceeding was not final and appealable and that the determination of the validity of the order must await a contempt judgment for violation.[2] Cobbledick v. United States, 309, U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783, discusses the Alexander decision and says that it does not apply to a situation where a district court compels the testimony of a person who has refused to make disclosures before the Interstate Commerce Commission. The Court pointed out that the district court proceedings and order were complete and that the order was final and appealable. This places discovery proceedings in aid of action by an administrative agency in a different category from such proceedings in aid of a matter pending before a court. Here the proceedings before the district court have come to an end. The party affected should not be 'powerless to avert the mischief of the order.'[3] In the circumstances presented a party should not be required to risk the hazard of punishment in order to obtain a determination of its rights.[4] In our opinion the order in question is final and appealable.
 
 
 6
 Phillips attacks the jurisdiction of the district court to require the production of documents. The claimed statutory basis for jurisdiction is 35 U.S.C. 24 which provides:
 
 
 7
 'The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent Office.'
 
 
 8
 The argument that Rule 34 proceedings are not within the sweep of the statute does not impress us. We believe that the intent of Congress was to make available to parties to contested cases in the Patent Office the provisions of Rule 34. The statute refers to both the attendance of witnesses and the production of documents. It does not limit discovery to that permissible under Rule 45. The courts of appeals which have considered the question are in agreement that Rule 34 proceedings are within the compass of 24.[5] We reach the same conclusion.
 
 
 9
 Phillips says that 24 contemplates initiation of discovery proceedings only by the issuance of a subpoena. None was issued here. Montecatini served notice of its Rule 34 motion on the clerk of an attorney for Phillips. Later the court clerk issued a summons which was served on an official of Phillips. The Third and Seventh Circuit Natta decisions upheld the initiation of proceedings by a Rule 34 motion but did not reach the jurisdictional question which Phillips raises.
 
 
 10
 The first sentence of 24 authorizes the initiation of the ancillary court proceedings by the issuance of a subpoena. The second sentence extends the application of the civil rules pertaining to the production of documents to Patent Office proceedings. The generality of the second sentence is not restricted by the particularity of the first. The contention that jurisdiction is not obtained until a subpoena is issued and that only then may a Rule 34 motion be presented glorifies form over substance. Such formalistic procedure performs no useful purpose.[6] We see no reason for the issuance of a subpoena to an unneeded witness when the desired documents may be obtainable through the use of Rule 34. Section 24 gives to parties in Patent Office proceedings the right to secure documents in accordance with the provisions of the federal civil rules. The power of the federal courts to enforce that right is not dependent on any particular formalism of procedure.
 
 
 11
 Rule 34 provides that upon motion 'the court in which an action is pending' may order 'any party' to produce documents. Phillips says that there no action is pending in the district court and, hence, Rule 34 may not be invoked. Reliance is placed on Okun v. Kastner, D.R.I., 1 F.R.D. 599. In that case an application was made for the production of a document sought in connection with a Patent Office interference proceeding and the court denied relief on the ground that no action was pending. The case was decided before the 1952 amendment to 24 which provided that the federal civil rules pertaining to production of documents apply to contested cases in the Patent Office. Whatever may have been the law before the amendment, we believe that the Rule 34 requirement of a 'pending' action is satisfied by the pendency of the interference proceedings. The judicial relief sought is ancillary to the administrative proceedings and is a continuation of the controversy pending before the agency.[7] To hold otherwise would thwart the congressional intent. The Patent Office has no authority to compel document production. The provisions of 24 give to the courts 'a jurisdiction designed to cooperatively complement Patent Office jurisdiction as an aid to the quest for truth.'[8] In our opinion the pendence of the interference proceedings suffices to establish an action pending.
 
 
 12
 Phillips says further that Rule 34 applies only to production by a party to an action and that it is not a party. Phillips is not a party to the interference proceedings but it admits that it is the assignee of Hogan and Banks who are applicants before the Patent Office. As such, it is the real party in interest and may not hide behind its assignors. The discovery procedures may not be frustrated by the submission of the patent applications in the names of nominal parties. In the situation presented, Phillips comes within the purview of the phrase 'any party.'
 
 
 13
 Additionally, Phillips complains that no action was commenced by the filing of a complaint under Rule 4, F.R.Civ.P., and that there was no constitutionally adequate service of process. In its Natta decision[9] the Third Circuit held that in a discovery proceeding pursuant to 24 there need be no filing of a complaint or service of summons. We agree. The controversy is formalized in the Patent Office and the discovery is ancillary. The motion for Rule 34 relief is sufficient to initiate court action.[10] The service made on Phillips satisfies the requirements of due process.[11] The notice was both reasonable and adequate.
 
 
 14
 The remaining issues relate to the duty of Phillips to produce specific documents. The parties stipulated as to the general character of documents requested. Phillips came forward with 68 documents which were inspected by the court in camera. Phillips also submitted an affidavit of one of its counsel identifying Phillips' personnel who authored or received the documents. As later noted, the trial court ruled on the individual documents. These were then sealed and transmitted to this court. We have examined the documents.
 
 
 15
 The first objection of Phillips is that a group of the documents are privileged communications because of the attorneyclient relationship. Montecatini argues that the privilege does not exist for a variety of reasons.
 
 
 16
 Montecatini says that there is no justification for the claim of privilege because of the 'full disclosure' provisions of the patent laws.[12] We recognize that in patent proceedings the applicant must observe the highest degree of candor, honesty, and good faith. In our opinion this does not foreclose the assertion of a claim of privilege in a patent proceeding. The attorney-client privilege is designed 'to facilitate the administration of justice,'[13] in order 'to promote freedom of consultation of legal advisors by clients.'[14] We see no reason why this long-established principle should not be applied to patent cases. The public interest is in the development of the truth, both in patent proceedings and in ordinary litigation. The duty of full disclosure differs from the freedom of consultation with lawyers.
 
 
 17
 The decisions relied on by Montecatini are not to the contrary. In American Cyanamid Co. v. Hercules Powder Co., D.Del., 211 F.Supp. 85, and Zenith Radio Corp. v. Radio Corp. of Americe, D.Del., 121 F.Supp. 792, both discovery proceedings in connection with patent applications, the privilege is recognized in patent cases in appropriate circumstances. The same is true of United States v. United Shoe Machinery Corp., D.Mass., 89 F.Supp. 357, an antitrust case where the privilege question was raised in connection with communications stemming from the patent department of a large corporation. We agree with Phillips that an automatic waiver of the privilege does not occur when a patent controversy is presented.
 
 
 18
 The record contains no waiver of the privilege by Phillips. It undoubtedly gave information to its attorneys so that they could act on it in the preparation of papers used in the patent proceedings. The situtation is like that where a client gives general information to his lawyer so that the lawyer may prepare a complaint in any ordinary civil action. The fact that some of the information is thus publicly disclosed does not waive the privilege. The case at bar is different from that considered in Wilcoxon v. United States, 10 Cir., 231 F.2d 384, 385-386, cert. denied 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469. That case related to the transmission of certain information with the intent that it be made public. No such intent appears here.
 
 
 19
 We find nothing in the record which intimates that Phillips channeled any papers into the hands of its lawyers for custodial purposes to avoid disclosure.[15] The lawyers concerned in the claim of privilege are all identified in an affidavit which is not questioned by Montecatini. They are described as 'duly licensed attorneys at law who were in the employment of Phillips Petroleum Company' at pertinent times. They were house lawyers rather than outside counsel.[16] In our opinion they are within the ambit of the confidential communication rule. The privilege does not depend on the number of clients that a lawyer has.
 
 
 20
 Another difficult question is what officers and employees of Phillips are in a position to speak for the company within the meaning of the word 'client.' We believe that the test is whether the person has the authority to control, or substantially participate in, a decision regarding action to be taken on the advice of a lawyer, or is an authorized member of a group that has such power.[17]
 
 
 21
 Some of the documents are communications from a lawyer to a member of the Phillips control group. Montecatini says that these are not within the privilege doctrine becasue it applies to communications to, not from, an attorney. Montecatini's reliance on 8 Wigmore, Evidence 2292 (McNaughton Rev.1961) p. 554, is misplaced. Reference is there made to communications 'by the client.' In the discussion which follows, Wigmore makes it clear that the reference is to differentiate between communications made by the client and those made by a third person. With reference to communications by the attorney to the client, Wigmore says (Id. 2320, p. 628): 'That the attorney's communications to the client are also within the privilege was always assumed in the earlier cases and has seldom been brought into question.'[18] The recognition that privilege extends to statements of a lawyer to a client is necessary to prevent the use of the lawyer's statements as admissions of the client.
 
 
 22
 Phillips asserted the attorney-client privilege in connection with documents numbered one through thirteen. The trial judge examined them in camera and ruled on each. We adopt the same procedure. As to documents 4, 6, 11, and 13 the claim of privilege was denied and Phillips now does not press its objection.
 
 
 23
 The trial court held documents 2, 9, 10, and 12 to be privileged and Montecatini asserts error. Each of these is a letter from an attorney to a member of the Phillips' control group. Each gives advice and seeks a management decision. In our opinion they are privileged.
 
 
 24
 Phillips objects to the denial of privilege to documents 1, 3, 5, 7, and 8. These are variously entitled 'Memorandum,' 'Recommendation Sheet,' and 'Comments.' We find 3, 5, and 7 to be in essence statements of opinion by executives. One and 8 are addressed generally to the 'Patent Division' which is composed of both members and non-members of the control group. Documents available to persons who are neither lawyers nor control group members are not privileged. In regard to each group we believe that the trial court correctly applied the principles relating to the claim of privilege.
 
 
 25
 Phillips says that documents 14 through 67 are the work product of its attorneys and not subject to discovery. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, announced the principle that discovery does not extend to require production of material assembled by an attorney in preparation for impending litigation. The principal limitation is that where the work product contains evidence assential to the preparation of an adversary's case and not otherwise available, production will be required in some circumstances. Id. at 329 U.S. 511, 67 S.Ct. 385, 91 L.Ed. 451. The trial court held that the documents were not within the work product doctrine becasue they were not prepared 'for possible litigation after a claim was recognized as having arisen.'
 
 
 26
 To support the reasoning of the trial court, Montecatini relies on Zenith Radio Corp. v. Radio Corp. of America, D.Del., 121 F.Supp. 792, 795, where it is said: 'Seldom, if ever, are patent department employees engaged in actual preparation for a trial of the required type.' This may be true but here some of the documents specifically refer to the interference proceedings. Nothing in Hickman v. Taylor suggests that the work product rule is limited to preparation for proceedings in a court of record. The rationale for the work product doctrine is the prevention of unnecessary interference with the work of an attorney. An attorney's work in the patent law fineld should be as much his own as it is in other areas of the law. The work product claim cannot be brushed saide on the theory that the documents were not prepared for use in litigation.
 
 
 27
 We shall not prolong this opinion by any lengthy discussion of contested documents. Many relate to tests and experiments. Phillips has a duty to disclose to the Patent Office all facts relating to the possible equities of the patent application.[19] It cannot hide behind the work product doctrine the research, tests, and experimints which are pertinent to the patent application.
 
 
 28
 Our only trouble is with documents 16, 17, 18, and 20. These are handwritten notes. Such materials prepared by an attorney during his consideration of a legal problem are within the work product doctrine.[20] The trouble is that, except for 17, they are not identified as having been written by any particular attorney. The author is not specified. Document 17 consists of handwritten notes of a named attorney. Its disclosure would invade the mental processes of an attorney working on a legal problem.
 
 
 29
 The order for production is affirmed for all documents except 17 which need not be producted. The costs will be equally divided between the parties.
 
 
 
 [1]
 Paramount Film Distributing Corp. v. Civic Center Theatre, Inc., 10 Cir., 333 F.2d 358, 361
 
 
 [2]
 See also United States v. Fried, 2 Cir., 386 F.2d 691, where it was held that an order denying a motion to quash an information subpoena in an Internal Revenue matter was not appealable
 
 
 [3]
 Perlman v. United States, 247 U.S. 7, 13, 38 S.Ct. 417, 62 L.Ed. 950
 
 
 [4]
 See Covey Oil Co. v. Continental Oil Co., 10 Cir., 340 F.2d 993, 996-997
 
 
 [5]
 In re Natta, 3 Cir., 388 F.2d 215; Natta v. Zletz, 7 Cir., 379 F.2d 615, 618; and Gladrow v. Weisz, 5 Cir., 354 F.2d 464, 468
 
 
 [6]
 See Gladrow v. Weisz, 5 Cir., 354 F.2d 464, 468, and Hickman v. Taylor, 329 U.S. 495, 505-506, 67 S.Ct. 385, 91 L.Ed. 451
 
 
 [7]
 See Rumsey v. George E. Failing Co., 10 Cir., 333 F.2d 960, 962; and 2 Moore's Federal Practice, 2d Ed., 1967 Supp. P5.06, p. 40
 
 
 [8]
 Natta v. Zletz, 7 Cir., 379 F.2d 615, 618
 
 
 [9]
 In re Natta, 3 Cir., 388 F.2d 215
 
 
 [10]
 See Cudahy Packing Co. v. National Labor Relations Board, 10 Cir., 117 F.2d 692, 694
 
 
 [11]
 See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865
 
 
 [12]
 See 35 U.S.C. 112, as amended, and Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 255, 66 S.Ct. 101, 90 L.Ed. 47
 
 
 [13]
 Radiant Burners, Inc., v. American Gas Ass'n 7 Cir., 320 F.2d 314, 322, cert. denied 375 U.S. 929, 84 S.Ct. 330, 11 .l.Ed.2d 262
 
 
 [14]
 Id. 320 F.2d at 318
 
 
 [15]
 See Colton v. United States, 2 Cir., 306 F.2d 633, cert. denied 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d. 499, an income tax prosecution where the lawyers made a blanket refusal to produce anything with relation to the income tax returns of the client
 
 
 [16]
 In United States v. United Shoe Machinery Corp., D.Mass., 89 F.Supp. 357, 360, the distinction between the two groups was stated thus: 'The type of service performed by house counsel is substantially like that performed by many members of the large urban law firms. The distinction is chiefly that the house counsel gives advice to one regular client, the outside counsel to several regular clients.'
 
 
 [17]
 City of Philadelphia v. Westinghouse Electric Corp., E.D.Pa., 210 F.Supp. 483, 485; American Cyanamid Co. v. Hercules Powder Co., D.Del., 211 F.Supp. 85, 88
 
 
 [18]
 See also 8 in 1 Pet Products, Inc. v. Swift & Co., S.D.N.Y., 218 F.Supp. 253, and cases there cited
 
 
 [19]
 Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 818, 65 S.Ct. 993, 89 L.Ed. 1381
 
 
 [20]
 Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451