**HONEYWELL, INC., Plaintiff,**

v.

**PIPER AIRCRAFT CORPORATION and Mitchell Industries, Inc., Defendants.**

**No. 68–446 Civ.**

United States District Court,
M. D. Pennsylvania.
March 27, 1970.

Fred Speaker, Morgan, Lewis & Bock-ius, Harrisburg, Pa., for plaintiff.

Clyde W. McIntyre, McNees, Wallace & Nurick, Harrisburg, Pa., for defendants.

SHERIDAN, Chief Judge.

This is a ruling on two motions by defendants for production of documents.

The underlying action is for patent infringement. The complaint charges that defendant, Mitchell Industries, Inc., has infringed plaintiff's patent Nos. 2,780,426, 2,993,664 and 3,031,158 for automatic instrument landing systems and aircraft control apparatus covered by one or more claims of plaintiff's patents. The complaint states that Mitchell has aided and abetted defendant, Piper Aircraft Corporation, in infringing these patents by selling Piper the control apparatus which Piper incorporates in its aircraft.

In their answer, defendants state that one or more of the patents in suit have been misused by plaintiff in such a way as to extend the power, leverage, monopoly and/or benefits beyond the scope of the patent. Defendants also contend that the patents are invalid and void and that plaintiff, through prolonged prosecution in the United States Patent Office, delayed presentation of claims and delayed the issuance of the patents to extend the effective life thereof, thereby rendering the patents invalid. Defendants also filed a counterclaim alleging that plaintiff has entered into agreements with others as part of a conspiracy to monopolize the manufacture, use and sale of aircraft guidance systems.

In the first motion, defendants seek production and inspection of some 80 specified documents identified in plaintiff's answer to defendants' interrogatory No. 22. In the second motion, defendants seek production and inspection of documents identified in a general way in plaintiff's answer to defendants' interrogatories Nos. 22, 24, 29, 31, 34, 40 and 46, and set forth in seven groups in defendants' motion. Plaintiff has agreed to produce documents set forth in groups 2, 3 and 4 in the latter motion. Plaintiff states that it has agreed also to produce the majority of the documents set forth in groups 1, 5, 6 and 7. The documents in these groups total about 8,000 pages of which about 1,000 are deemed by plaintiff to be either privileged or protected from discovery by the "work product" rule, and plaintiff has stated that the other 7,000 pages are available for inspection. Plaintiff has attached to its brief as Exhibit A the documents in the various groups which it will not voluntarily produce.

Plaintiff's brief and Exhibit A indicate that none of the 80 specified documents in defendants' first motion are objectionable. The objections go primarily to some of the documents listed under groups 1, 5, 6 and 7 of the second motion. Plaintiff states that these documents concern (1) license negotiations between Honeywell and third parties ei-

ther presently pending or terminated by the execution of a license, or (2) interference proceedings before the United States Patent Office involving the patents in suit. To categorize further, the documents, besides relating to one of the subjects above, are stated to be as follows: (1) documents passing between outside Honeywell counsel and Honeywell house counsel or control group personnel; (2) documents passing between Honeywell house counsel or between Honeywell house counsel and Honeywell control group personnel; (3) documents passing between Honeywell house counsel and Honeywell employees or outside persons, all as agents for counsel; and (4) documents which constitute memoranda or notes prepared for the legal file including attorneys' notes on otherwise discoverable materials.

While plaintiff objects to discovery on the basis that these documents are protected by the "attorney-client and work product privileges," its brief is not clear as to whether it considers these "privileges" to be one and the same, or whether certain documents are protected by one or the other, or both "privileges." The attorney-client privilege, of course, differs from the "work product" rule. Hanover Shoe, Inc. v. United Shoe Machinery Corp., M.D.Pa.1962, 207 F.Supp. 407. In any case, the objections will be viewed in the light of both principles.

■■■ Plaintiff states, and it appears from its Exhibit A, that the majority of the documents relate to prior patent interference cases apparently tried before the Board of Patent Interferences of the United States Patent Office. Plaintiff argues that materials relating to interference are within the scope of the attorney-client privilege and work product rule, citing In re Natta, 3 Cir.1969, 410 F.2d 187, and with this general statement there can be no quarrel. However, Natta was a case ancillary to an interference proceeding pending in the Patent Office. The instant case is not related to an interference

proceeding. Turning first to the "work product" objection, a review of plaintiff's Exhibit A discloses that many of the documents related to interference cases are dated in the 1940's to 1950's and early 1960's. All documents listed are prior to the dates of this suit. Many of the interference actions are indicated as having been terminated by settlement or agreement. There is no indication that any are still pending. Defendants were not parties to the interference actions. An attorneys' memorandum in a prior case involving different parties does not have the protection of the "work product" principle. 4 Moore, Federal Practice para. 26.23 [8.– 3] at p. 1436 (2d ed.). Hanover Shoe, Inc. v. United Shoe Machinery Corp., supra; Tobacco & Allied Stocks, Inc. v. Transamerica Corp., D.Del.1954, 16 F. R.D. 534; Cf. Republic Gear Co. v. Borg-Warner Corp., 2 Cir.1967, 381 F.2d 551. There is no indication that the documents were prepared "with an eye toward litigation" involved in this suit. The work product objection cannot prevail.

■■■ With respect to the attorney-client privilege, the following elements must appear before the privilege may be asserted:

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

There is no indication whether the subject matter of most of the documents relates to legal advice from a legal adviser in that capacity. This can only be assumed from the fact that in many instances the sender or receiver of the communication is a lawyer. In many instances it cannot be determined whether

the communication was made between an attorney and client. As examples, there are documents described as "Draft copies of agreement—no date"; "Notes 12/15/67—No author"; "Memorandum —undated—no author"; "Handwritten Notes apparently by a Patent Attorney." Where the person who originated or received the document is identified, in addition to counsel, a separate schedule of titles of employees describes them as "Honeywell employee," "Honeywell management," "Honeywell inventor," "Honeywell chief pilot." Insofar as a corporation is concerned, only communications between counsel and the corporation's "control group," who are in effect *the clients,* are within the purview of the privilege. Natta v. Hogan, 10 Cir.1968, 392 F.2d 686. In determining what officers and employees of a company asserting a privilege speak for the company within the meaning of "client," the test is whether the person has the authority to control, or substantially participate in, a decision regarding action to be taken on advice of counsel, or is an authorized member of a group that has this power. Natta v. Hogan, supra. A research chemist and a group leader in a research and development department have been held not to be within the control group. Hogan v. Zletz, N.D.Okl. 1967, 43 F.R.D. 308, modified on other grounds sub nom. Natta v. Hogan, 10 Cir.1968, 392 F.2d 686. One who is a part of "management," "inventory," "employee" and "chief pilot" may or may not be a member of the control group. Persons in management may range from the lowest junior executive or executive trainee to the chairman of the board. Many of the documents are described as "memorandum," and it is not known whether the distribution of these documents reached others than those who may be considered in a class to which the privilege applies.[1] One who claims the benefit of privilege should bear the burden of demonstrating that the privilege exists. Camco, Inc. v. Baker Oil Tools, Inc., S.D.Texas 1968, 45 F.R.D. 384. Plaintiff has not met this burden.

■ Aside from the above matters, when a plaintiff in a patent infringement suit has put the validity of the patents directly in issue, he may have waived any claim of privilege. 4 Moore, Federal Practice para. 26.22[5] (2d ed.). Cf. Lind v. Canada Dry Corp., D.Minn. 1968, 283 F.Supp. 861. Plaintiff admits that the documents sought are relevant to the claims asserted, and has not questioned whether "good cause" for their production has been shown.

■ In their brief, defendants withdrew their request for inspection and copying of documents to or from Mr. Raphael Tourover, Mr. Will Freeman and Mr. W. M. Van Sciver, three of the persons whose names appear in plaintiff's Exhibit A. The remaining documents should be produced for inspection and copying.

1. In Harper & Row Publishers, Inc. v. Decker, 7 Cir. 1970, 423 F.2d 487, the court criticized the control group test:

"We conclude that the control group test is not wholly adequate, that the corporation's attorney-client privilege protects communications of some corporate agents who are not within the control group, * * *.

*     *     *     *     *

"We conclude that an employee of a corporation, though not a member of its control group, is sufficiently identified with the corporation so that his communication to the corporation's attorney is privileged where the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment. * * *"

Even under this extension of the privilege beyond the corporate "control group," with respect to most of the persons listed, it cannot be determined whether the communications were at the direction of their superiors, and whether the communications were within the scope of their duties.