YANKEE ATOMIC ELECTRIC COMPANY, Connecticut Yankee Atomic Power Company, Maine Yankee Atomic Power Company, Florida Power & Light Company, Northern States Power Company, Duke Power, a Division of Duke Energy Corp., Indiana Michigan Power Company, Sacramento Municipal Utility District, Southern Nuclear Operating Company, et al., Commonwealth Edison Company, Boston Edison Company, GPU Nuclear, Incorporated, Wisconsin Electric Power Company, Power Authority of the State of New York, Omaha Public Power District, Nebraska Public Power District, Tennessee Valley Authority, PSEG Nuclear LLC, Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 98–126C, 98–154C, 98–474C, 98–483C, 98–484C, 98–485C, 98–486C, 98–488C, 98–614C, 98–621C, 99–447C, 00–440C, 00–697C, 00–703C, 01–115C, 01–116C, 01–249C, 01–551C.

United States Court of Federal Claims.

Oct. 30, 2002 [1].

---

1. This order originally was filed on October 9, 2002. The order is being re-issued for publication in response to defendant's October 15, 2002 request.

Jerry Stouck, Spriggs & Hollingsworth, Washington, DC, attorney of record for plaintiffs Yankee Atomic Electric Co., Connecticut Yankee Atomic Power Co., and Maine Yankee Atomic Power Co. Of counsel were Robert L. Shapiro, Peter J. Skalaban, Jr., Glenn S. Greene, and Raymond Krncevic, Spriggs & Hollingsworth, Washington, DC.

Alex D. Tomaszczuk, Shaw Pittman LLP, McLean, Virginia, attorney of record for plaintiffs Boston Edison Co., Duke Power Co., Florida Light & Power Co., GPU Nuclear, Inc., Indiana Michigan Power Co., Northern States Power Co., Power Authority of the State of New York, Omaha Public Power District, Nebraska Public Power District, and PSEG Nuclear LLC, Of counsel were Jay E. Silberg, Devon E. Hewitt, Daniel S. Herzfeld, and Jack Y. Chu, Shaw Pittman LLP, Washington, DC.

Melvin C. Garbow, Arnold & Porter, Washington, DC, attorney of record for plaintiff Sacramento Municipal Irrigation District.

M. Stanford Blanton, Balch & Bingham LLP, Birmingham, Alabama, attorney of record for plaintiff Southern Nuclear Operating Co.

Richard W. Oehler, Perkins Coie LLP, Seattle, Washington, attorney of record for plaintiff Wisconsin Electric Power Co.

David A. Handzo, Jenner & Block LLC, attorney of record for plaintiff Commonwealth Edison Co.

Peter K. Shea, Knoxville, Tennessee, attorney of record for plaintiff Tennessee Valley Authority.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant, with whom were David M. Cohen, Director, and Robert D. McCallum, Jr., Assistant Attorney General. Of Counsel were Jane K. Taylor, Office of General Counsel, Department of Energy, Washington, DC, and Franklin E. White, Jr., Assistant Director, Marian E. Sullivan, William L. Olsen, Erin E. Powell, Heide L. Herrmann, R. Alan Miller, Kevin B. Crawford, and Russell A. Shultis, Attorneys, Department of Justice, Washington, DC.

### Order regarding Motions for Clarification and to Compel

SYPOLT, Judge.

Plaintiffs have moved for clarification of the court's July 23, 2002 order directing plaintiffs, as to each document listed in its privilege log, to provide reasons "why the Government's description of the particular document [sought to be protected] does not constitute *prima facie* grounds for invoking a claim of privilege." They also, by way, *inter alia*, of motions to compel, contest defendant's requests for a protective order to prevent disclosure of materials listed in its privilege log and allegedly covered by the deliberative process, attorney work-product, or attorney-client privileges.

### Prima Facie Description

Plaintiffs suggest that the court's reference to *"prima facie* grounds" is inappropriate because some of the grounds provided by the Government, although ostensibly supporting a claim of privilege, should not be credited. Plaintiffs also request that the court "clarify" that the Government shall have no more chances to support its privilege claims.

The term *"prima facie"* comes from the Latin phrase for "at first view." *Webster's Ninth New Collegiate Dictionary* 932 (1990). Normally, a *"prima facie* case" consists of a presentation of evidence that suffices as a matter of law to warrant submission of an issue for decision by the trier of fact. 9 J. Wigmore, *Evidence* § 2494 (J. Chadbourn rev. ed.1981). "[T]he phrase *'prima facie* case' ... may be used by courts to describe [a party's] burden of producing enough evidence to permit the trier of fact to infer the fact at issue." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.,* 851 F.2d 1387, 1392 (Fed.Cir.1988).

However, *"prima facie"* also may mean merely that which is sufficient to establish a fact or raise a presumption unless disproved or rebutted. *E.g., Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (in the Title VII context the Supreme Court uses "prima facie case" to mean establishing a legally mandatory, rebuttable presumption).

As to the attorney-client privilege, a major area of plaintiffs' challenge to defendant's privilege log, Dean Wigmore states:

It is not easy to frame a definite test for distinguishing legal from nonlegal advice.... The most that can be said by way

of generalization is that a matter committed to a professional legal adviser is *prima facie* so committed for the sake of the legal advice which may be more or less desirable for some aspect of the matter, and is therefore within the privilege *unless it clearly appears to be lacking* in aspects requiring legal advice.

8 Wigmore, *Evidence* § 2296 (McNaughton rev. ed.1961) (emphasis added).

Therefore, the court's order that each party submit its *prima facie* grounds for denying production of each withheld document requires merely a description of the type of document (*e.g.,* an opinion letter, a request for an opinion letter), its topic, date, the writer and recipient, and an explanation as to why the matter is deemed to be privileged (which privilege was being invoked and on what grounds). Needless to say, the party invoking the privilege need not reveal so much about the contents of a communication as to compromise the privilege. These are the customary contents of a privilege log, and plaintiffs have demonstrated no reason why they should not apply in this case.

The challenger of a privilege has the burden of showing, whether based on the terms of the description, or on extraneous knowledge, that the document appears *not* to be privileged. These standards are sufficiently clear from the court's July 23, 2002 order, and the usual rules governing this type of discovery. Therefore, plaintiffs' motion for further clarification on this point is denied.

### Deliberative Process Privilege

The Government has asserted the deliberative process privilege over 24 documents described in an affidavit from Mr. Ronald A. Milner, Chief Operating Officer, Civilian Radioactive Waste Management (OCRWM), within the Department of Energy (DOE). By a May 13, 2002 amendment to the standing delegation order from the Secretary to the Under Secretary for Energy, Science, and Environment, DOE Delegation Order No. 00–002.00, the Secretary of Energy delegated to that Under Secretary, with the right to re-delegate in part or in whole, the authority to assert the deliberative process privilege in matters within her cognizance. On the same day, the Under Secretary re-delegated this authority, with the power to re-delegate, to the Director of the OCRWM, and the latter re-delegated this authority to Mr. Milner.

In his affidavit, Mr. Milner provides a description of each document, including the author, the nature of his or her advice, and, in most cases, the specific decision being deliberated. The affidavit also states that invoking the privilege in each instance is necessary to assure the free flow of ideas and candid discussions within the agency.

The Government argues that: 1) delegation of the authority from the Secretary down to Mr. Milner is proper under the Secretary's general sub-delegation authority contained in 42 U.S.C. § 7252; 2) Mr. Milner's affidavit meets the requirements for invoking the deliberative process privilege; 3) any factual information in the withheld documents is so intertwined with the deliberative recommendations that redaction is impractical; and 4) plaintiffs have shown no need (such as relevance, cumulativeness, unavailability from other sources) to override the privilege.

Plaintiffs contend that, because Mr. Milner is not the head of the agency, his assertion of privilege is improper and that, even if the authority could be delegated, the head of the agency first must issue guidelines on the proper use of the privilege, which was not done.

Furthermore, according to plaintiffs, even if Mr. Milner may assert the privilege, his descriptions of the withheld documents are insufficiently detailed because they do not establish that they were prepared by their authors for the purpose of assisting an agency official charged with making the decision, but merely establish that the documents "reflect" policy deliberations.

Plaintiffs allege that 20 of the 24 documents described in the affidavit are deficient on various other grounds as well, *e.g.,* because the privilege was waived by the document's later incorporation into official agency decisions, or because the document relates to discussions with another agency, such as the Office of Management and Budget (OMB), as

to which the Secretary of Energy cannot assert a privilege. Plaintiffs also complain that the affidavit does not provide "precise and certain" reasons for asserting the privilege as to each document.

■ The deliberative process privilege, sometimes confused with executive privilege,[2] applies to "documents '*reflecting* advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (emphasis added) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C.1966)). (This statement by the Supreme Court should lay to rest plaintiffs' argument that merely "reflecting" agency deliberations, etc., does away with the privilege.)

### A. Delegation

■ Under 42 U.S.C. § 7252, the Secretary of Energy is permitted to delegate his authority unless otherwise prohibited by law.[3] Although some courts have required that the deliberative process privilege be invoked by the head of the agency himself, after personal consideration, *see United States v. O'Neill*, 619 F.2d 222, 225 (3d Cir. 1980), so high a level of authorization has not been required in this circuit.[4]

On the contrary, *Department of Energy v. Brett*, 659 F.2d 154, 155 (Temp.Em.Ct.App.1981), held that the deliberative process privilege need not be asserted by the head of an agency or even a senior official, but may be "raised by individuals with specific and detailed knowledge of the documents in which the privilege is asserted".[5]

Several other jurisdictions also allow delegation. *See Landry v. Federal Deposit Insurance Corp.*, 204 F.3d 1125 (D.C.Cir.2000) (affidavit from the head of a regional division sufficient to invoke the deliberative process privilege); *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882–83 (5th Cir.1981) (same); *Kerr v. United States Dist. Ct. for North. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir.1975)

---

**2.** "Executive privilege" generally refers to the constitutional privilege invoked by the President of the United States to withhold confidential Presidential or intra-executive branch communications of the President. *See United States v. Nixon*, 418 U.S. 683, 703–706, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The privilege is not absolute. *Id.* at 705–06, 94 S.Ct. 3090. *See also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n. 17, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The deliberative process privilege must be distinguished from the "state secrets" privilege protecting military and state secrets. *See United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *Guong v. United States*, 860 F.2d 1063 (Fed.Cir.1988).

**3.** 42 U.S.C. § 7252 provides:

Except as otherwise expressly prohibited by law, and except as otherwise provided in this Act, the Secretary may delegate any of his functions to such officers and employees of the Department as he may designate, and may authorize such successive redelegations of such functions within the Department as he may deem to be necessary or appropriate.

**4.** The trial courts in *Vons Cos. v. United States*, 51 Fed.Cl. 1, 22–23 (2001); *Walsky v. U.S.*, 20 Cl.Ct. 317, 320 n. 3 (1990), and *CACI Field Services, Inc. v. United States*, 12 Cl.Ct. 680, 687 (1987), have concluded that delegation is not allowed in reliance on *Reynolds*, 345 U.S. 1, 73

S.Ct. 528, 97 L.Ed. 727, and *Cetron Elec. Corp. v. United States*, 207 Ct.Cl. 985, 1975 WL 6632 (1975). However, *Reynolds* involved, not a deliberative process, but a state secrets, privilege. The *dictum* in *Cetron* that "an executive privilege ... can be invoked only by the head of a department or agency," 207 Ct.Cl. at 989, referred to the constitutional executive privilege vested in the President of the United States, discussed in *U.S. v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039, and *Sun Oil Co. v. United States*, 206 Ct.Cl. 742, 514 F.2d 1020 (1975), not the deliberative process privilege. *See Cetron*, 207 Ct.Cl. at 992.

**5.** Plaintiffs contend that the precedential effect of decisions by the Temporary Emergency Court of Appeals (TECA) is limited to cases that the Federal Circuit reviews as a successor to TECA (*i.e.*, cases arising under emergency price control legislation). However, the Federal Circuit has repeatedly stated, without any qualification, that TECA decisions are precedential. *See, e.g., Consolidated Edison Co. of N.Y., Inc. v. Richardson*, 232 F.3d 1380, 1383 (Fed.Cir.2000) ("This court has adopted the decisions of the [TECA] as its precedent."). Clearly, the appropriateness of the delegation of authority to invoke the deliberative process privilege should not depend on whether the underlying complaint involved emergency price controls. Moreover, even if TECA decisions are not binding, this court remains free to follow them.

(privilege generally available but not in that case because not invoked by any official of the agency); *Grossman v. Schwarz,* 125 F.R.D. 376, 381 (S.D.N.Y.1989) (governmental privilege may be invoked by an agency official other than the department head); *Mobil Oil Corp. v. DOE,* 520 F.Supp. 414, 418 (N.D.N.Y.1981) (allowing delegation as long as the delegatee can render "reasoned judgment" on the privilege), *rev'd on other grounds,* 659 F.2d 150 (Temp.Em.Ct.App. 1981).

Significantly, the Supreme Court's Proposed Rule 509 allows assertion of the deliberative process privilege, as a "privilege for official information," as low as the level of "any attorney representing the Government."

The rationale for delegation in *Brett* and *Landry* applies fully here. Insisting that the deliberative process privilege be asserted only by the Secretary of an agency after gaining "specific and detailed" knowledge of every document sought effectively would prevent the Government from ever invoking the privilege. Moreover, even if the Secretary were to attempt to acquire such detailed personal "knowledge," it invariably would derive from briefings by the very officials given the delegations. Failing to permit invocation by the agency officials most familiar with the matter at hand, in fact, would conflict with another principle underlying the privilege—the need for actual, personal consideration by the invoker of the privilege. *Landry,* 204 F.3d at 1134–35. Therefore, the court concludes that the Secretary of Energy is not prohibited from delegating to Mr. Milner the power to invoke the deliberative process privilege.

## B. *Invocation of the Privilege*

■ To be eligible for deliberative process protection, a policy-making document must be both pre-decisional and deliberative. *In re Sealed Case,* 121 F.3d 729, 737 (D.C.Cir. 1997) (citations omitted). *See also Vaughn v. Rosen,* 523 F.2d 1136, 1144 (D.C.Cir.1975) (a document is part of the deliberative process if it makes recommendations or expresses opinions on legal or policy matters). Thus, the privilege does not apply to "communica-

tions made after the decision and designed to explain it," *Sears, Roebuck,* 421 U.S. at 152, 95 S.Ct. 1504, or to factual material severable from the deliberative context, *Environmental Protection Agency v. Mink,* 410 U.S. 73, 87–88, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

■ Plaintiffs argue that documents later incorporated into an official agency decision are not privileged. *See Coastal States Gas Corp. v. DOE,* 617 F.2d 854, 866 (D.C.Cir. 1980) (a document can lose its pre-decisional status if adopted as the agency position). However, as the Supreme Court made clear in *Sears, Roebuck,* 421 U.S. at 159–162, 95 S.Ct. 1504, and *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 186, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975), documents superceded by final agency action and not expressly adopted therein are protected as pre-decisional because they reflect the deliberations of the agency and only the final action itself will accurately reflect the agency's final view.

The court in *Coastal States,* 617 F.2d at 867–68, was concerned that agencies might develop a "secret law" based on internal memoranda, which, while labeled "pre-decisional," in fact were final dispositions used as binding guidelines or precedents or as the means to apply established policies to particular facts, which clearly would be post-decisional.

■ However, the documents described in Mr. Milner's affidavit appear to be non-binding recommendations; were not, as far as has been shown, final dispositions; apparently were not used as precedent; have not had operational effect except to the extent they informed agency officials; and were not expressly incorporated into or adopted by final agency decision. Therefore, they are properly protected.

While plaintiffs claim that document A, for example, became part of the final "decision" to which it relates and is, therefore, outside the privilege, nothing in Mr. Milner's affidavit, or proffered by plaintiffs, reveals that document A was adopted, implemented, or enforced as a final agency decision.[6] And

---

6. The affidavit states that document A *"seeks*

Secretary-level approval of the attached Program

*Coastal States,* even if it bound this court, does not apply, because the affidavit, defendant's privilege log, and plaintiffs' objections to it, do not indicate, in the first instance, that any of the documents as to which the deliberative process privilege has been asserted contain final or binding agency legal or regulatory decisions.

■ Neither is the privilege negated by defendant's failure, in some cases, to identify a later, specific agency decision that was based on the "pre-decisional" documents. As the Supreme Court stated:

> [The] emphasis on the need to protect predecisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

*Sears, Roebuck,* 421 U.S. at 153 n. 18, 95 S.Ct. 1504.

Mr. Milner's affidavit provides sufficient information to conclude that each document was prepared in order to offer opinions or recommendations to agency decision-makers prior to their taking action on legal or policy matters. Plaintiffs have pointed to no factual information regarding any document listed in the affidavit that would undermine that conclusion, or even to any severable factual information not qualifying for the privilege.

■ Plaintiffs' proposition that documents relating to DOE's discussions with OMB or with any other agency are outside of the scope of this privilege, or waived, also must be rejected. The privilege protects *"intra-governmental* documents reflecting advisory opinions, recommendations and deliberations." *Carl Zeiss Stiftung,* 40 F.R.D. at 324 (emphasis added).

The Supreme Court's Proposed Rule 509(a)(2)(A) (emphasis added) also defines information subject to the privilege as *"intra-governmental* opinions or recommendations . . . ." *See also Texaco P.R. v. Dep't of Consumer Affairs,* 60 F.3d 867, 884–85 (1st Cir. 1995) ("the deliberative process privilege 'shields from public disclosure confidential *inter-agency* memoranda on matters of law or policy'") (quoting *Nat'l Wildlife Fed'n v. United States Forest Serv.,* 861 F.2d 1114, 1116 (9th Cir.1988)). Since the privilege is being invoked by the agency "having control over the requested information," *Landry,* 204 F.3d at 1135, *Walsky,* 20 Cl.Ct. at 320, DOE's assertion of the privilege over such documents is proper even if they were discussed with OMB.

Accordingly, the court denies plaintiffs' motion to compel the production of the documents withheld pursuant to the deliberative process privilege asserted in Mr. Milner's May 13, 2002 affidavit. To the extent that the Government needs to offer "precise and certain reasons" for invoking the privilege, *see Coastal Corp. v. Duncan,* 86 F.R.D. 514, 519 (D.Del.1980) (citing *Smith v. Federal Trade Com.,* 403 F.Supp. 1000, 1017 (D.Del. 1975)),[7] it has done so by providing descriptions of the documents and averring that continued confidentiality is necessary to assure the free flow of ideas and candid discussions within the agency.

### *Attorney–Client Privilege*

Plaintiffs' original motions to compel disputed the Government's withholding of 925 documents based on attorney-client or attorney workproduct privileges.[8] Following the

---

Directions for Safeguarding Irradiated Nuclear Materials." (Emphasis added).

**7.** None of the decisions binding on this court, including *Sears, Roebuck,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29, and *Kaiser Aluminum & Chemical Corp. v. United States,* 141 Ct.Cl. 38, 157 F.Supp. 939 (1958), recognizes this as an independent condition for invoking the deliberative process privilege.

**8.** On April 22, 2002, the Utility Plaintiffs filed a motion to compel covering defendant's February 15, 2002 privilege log. On April 29, 2002, the Yankee Utilities filed a separate motion to compel, covering defendant's February 15, 2002 and two 1999 privilege logs. On May 7, 2002, defendant filed a copy (originally filed with Judge Merow) of its response to the Yankee Utilities' motion to compel covering the 1999 privilege

Government's July 10, 2002 revisions to its privilege log, plaintiffs continue to demand production of 276 documents withheld under these privileges.

Plaintiffs argue that in this revised log, the Government has failed adequately to indicate the author and recipient and the legal issue involved, or to show that the Government attorneys were not acting in their "regulatory capacity." They also argue that the Government has not shown that certain documents dating back to 1992 and earlier were prepared in anticipation of litigation, and that defendant has waived its privilege over certain documents by voluntarily disclosing related documents or by failing to "verify" their confidentiality.

Defendant maintains that it has satisfied its burden of claiming the privileges by providing the names of the author and recipient, the date (if available), and a description of the document, identifying the legal issue. The Government denies that any of the withheld documents involve policy-making, rather than legal advice or work-product. As to the challenged attorney work-product, the Government argues that it was prepared in anticipation of litigation, even if not the litigation in this case, one of the numerous lawsuits filed since the 1980s under the Nuclear Waste Policy Act of 1982. Finally, the Government claims that no waiver has occurred because: 1) the disclosures of two of the documents at issue were extrajudicial; and 2) the documents it continues to withhold do not relate to the subject matter of the documents it voluntarily disclosed.

Plaintiffs dispute the invocation of the attorney-client privilege for a significant number of the documents on the grounds that the Government's attorneys' analyses of the Government's obligations under a statute, regulation, or contract constitute, not legal advice, but policy-making, and therefore fall outside the scope of the attorney-client privilege, or because the advice or request for advice concerns public matters.

It is clear that an agency and its lawyers may enjoy the type of relationship that would entitle them to the attorney-client privilege, *Coastal States,* 617 F.2d at 863, regardless of whether the agency's lawyer serves as in-house agency counsel, as an attorney employed by the Department of Justice, or as outside, private counsel, *see* 1 Paul R. Rice, *Attorney–Client Privilege in the United States* § 3:12, at 49–50, § 4:28, at 124 (2d ed.1999) (citing cases).

Furthermore, the privilege, under certain circumstances, may protect, not only communications from client to counsel, but also communications from counsel to client, which may reveal by implication whether a communication was made and its substance. 8 Wigmore, *Evidence* § 2320 (McNaughton rev. ed.1961). *See American Standard, Inc. v. Pfizer Inc.,* 828 F.2d 734, 745 (Fed.Cir.1987) (holding that communications from attorney to client may be covered by the lawyer-client privilege if they "reveal, directly or indirectly, the substance of a confidential communication by the client;" but refusing to apply privilege to unsigned, undated opinion letter, addressed to no-one). *See also id.* at 745 ("It is conceivable that disclosure of the bare fact that counsel was consulted" might in some circumstances justify application of the privilege) (citing *United States v. Tratner,* 511 F.2d 248, 252 (7th Cir.1975)); *Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21, 28 (N.D.Ill.1980).

As plaintiffs point out, several cases, including *Coastal States,* 617 F.2d 854, and *Gulf Oil Corp. v. Schlesinger,* 465 F.Supp. 913 (E.D.Pa.1979), have held that analyses of agency regulations or statutory programs do not fall under the protection of the attorney-client privilege. However, those courts did not base their holdings on any conclusion that interpreting the Government's obligations under a statute or regulation is not "legal" advice. Rather, courts have refused to apply the privilege to interpretations of the Government's legal rights and obligations

logs. On May 13, 2002, the Government filed a single response to both motions to compel covering the February 15, 2002 privilege log. On June 3, 2002, all Utility Plaintiffs filed a single reply covering the 1999 and February 15, 2002 privi-

lege logs. On June 6, 2002, the court ordered defendant to confer with plaintiffs to agree in principle on a revised privilege log. Defendant filed the revised privilege log on July 10, 2002.

under statutes or regulations where: 1) revealing these communications would not disclose confidential information, *cf. Coastal States,* 617 F.2d at 863 (legal opinions based on factual information obtained from a third party do not reveal client's confidences); *Schlefer v. United States,* 702 F.2d 233, 245 (D.C.Cir.1983) (same); *Tax Analysts v. I.R.S.,* 117 F.3d 607, 619 (D.C.Cir.1997) (same); *Schlesinger,* 465 F.Supp. at 917 (interpretation of public regulations is not confidential); or 2) the legal opinions of the Government's attorneys have the effect of "law," *Niemeier v. Watergate Special Prosecution Force,* 565 F.2d 967, 974 (7th Cir.1977) (legal memoranda of agency counsel have the force of law); *Tax Analysts,* 117 F.3d at 619 (opinions of IRS counsel amount to making law).

The attorney-to-client privilege for communications by an attorney that reveal, directly or indirectly, the substance of a confidential communication by the client, which was validated in *American Standard,* 828 F.2d at 745, also was applied in *Carter v. Gibbs,* 909 F.2d 1452, 1458 (Fed.Cir.1990), to deem not privileged a memorandum from the Acting Assistant Attorney General to the Solicitor General because it did not "betray any communications between the client (the IRS or the Department of Treasury) and the attorney (the Justice Department)."

However, unlike the D.C. Circuit in *Coastal States, Schlefer,* or *Tax Analysts,* the Federal Circuit has never expressly limited the attorney-to-client communications privilege to communications revealing confidential *information,* as opposed to confidential *communication.* But see *American Standard,* 828 F.2d at 744–46.[9] Instead, in *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 806 (Fed.Cir.2000), the court observed that "[i]f an attorney-client communication could be discovered if it contained information known to others, then it would be the rare communication that would be protected and,

in turn, it would be the rare client who would freely communicate to an attorney." (quoting *Knogo Corp. v. United States,* 1980 WL 39083, 1980 U.S.Ct. Cl. LEXIS 1262, at *13 (Ct. Cl. Trial Div.1980)).

■ The distinction between information and communication is critical because the attorney-client privilege protects the information that was communicated with the expectation of privacy, but not the underlying factual information. 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 503.14[4][a] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2002) ("Thus, for example, if the privilege is invoked, a client may not be asked the question: 'What did you tell your attorney about the amount claimed as a business expense?' However, the client may be asked the question: 'Did you spend the amount claimed as a business expense for meals or for travel?' ")

While most courts have properly construed the privilege as protecting *communications* and not the underlying facts or *information; see Natta v. Hogan,* 392 F.2d 686, 692–93 (10th Cir.1968) (refusing to force disclosure of attorney-client communications even though they were based on publicly-available documents); *Byrnes v. IDS Realty Trust,* 85 F.R.D. 679, 683 (S.D.N.Y.1980) (the fact that information is non-confidential will not defeat the privilege as long as the communication was made in confidence); *In re Ampicillin Antitrust Litigation,* 81 F.R.D. 377, 389–90 (D.D.C.1978) (it is not necessary that information be confidential as long as the communication of the information was made in confidence), some courts have had difficulty distinguishing the two concepts and "have rendered questionable decisions." 1 Paul R. Rice, *Attorney–Client Privilege in the United States* § 5:1, at 19, 33 (2d

9. As pointed out in Judge Newman's dissent, *American Standard,* 828 F.2d at 747–48, the following language in the majority's opinion blurs the distinction between confidential communication and confidential information:

> The district court said the opinion letter was not a privileged communication because it relied on nonconfidential information and stated the source of that information. Contrary to

American Standard's assertion, it did not say the opinion letter was not privileged merely because it relied on publicly available information. It clearly said the letter relied on nonconfidential information gleaned from public records. American Standard simply ignores the finding of nonconfidentiality and focuses alone on its source.

ed.1999) (listing *Coastal States, Schlefer,* and *Tax Analysts* as examples of cases where the court confused confidential *communications* with non-confidential *information*).

■ Therefore, the court rejects plaintiffs' argument, based on *Coastal States* and *Schlesinger,* that an attorney's interpretation of a statute, regulation, or contract is discoverable merely because the underlying information is public.[10] Neither are these interpretations discoverable based on plaintiffs' argument that they constitute secret law. As discussed in connection with the deliberative process privilege, the Supreme Court held in *Sears, Roebuck,* 421 U.S. at 159–162, 95 S.Ct. 1504, and *Grumman Aircraft,* 421 U.S. at 186, 95 S.Ct. 1491, that documents not having precedential value, and that are superceded by final agency action, do not constitute secret law unless expressly adopted in a final disposition. Plaintiffs here have failed to identify a single document in the revised privilege log that has the characteristics of secret law.

While the attorney-client privilege applies only to requests for any confidential communication transmitted for the purpose of obtaining legal services, in determining that purpose "[i]t is enough that the overall tenor of the document indicates that it is a request for legal advice or services." *Spalding Sports,* 203 F.3d at 806.

■ Moreover, a communication by a client with his or her attorney is presumptively a request for legal advice: "[A] matter committed to a professional legal adviser is *prima facie* so committed for the sake of the legal advice which may be more or less desirable for some aspect of the matter, and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice." 8 Wigmore, *Evidence* § 2296 (McNaughton rev. ed.1961). In addition, the services need not be rendered in conjunction with actual or potential litigation. *Coastal States,* 617 F.2d at 862. *Montgomery County v. Microvote Corp.,* 175 F.3d 296, 303 (3rd Cir.1999) (citing *Weinstein's Federal Evidence,* § 503.13[1]); *Attorney–Client Privilege in the United States,* § 1:13.

The documents authored by Susan Klein after 1997 do constitute legal, rather than policy, advice because, contrary to plaintiffs' contention, and as Ms. Klein's deposition testimony states, she continued to provide legal advice and to report to the General Counsel between 1997 and 1999. Thus, the documents she authored between 1997 and 1999, and described as her legal advice, are protected by the attorney-client privilege.

Plaintiffs also maintain that two documents, Nos. 1875 and 1878, requesting the legal advice of Sandra Sherman of the DOE Office of General Counsel,[11] are not protected because the advice voluntarily was disclosed by DOE, as defendant concedes, in a September 1994 draft report, unrelated to any litigation, on greater than class C low level radioactive waste owned by DOE.

■ As a general rule, disclosure of a privileged communication waives the privilege over other communications of the same subject matter. *See GFI, Inc. v. Franklin Corp.,* 265 F.3d 1268, 1275 (Fed.Cir.2001). Disclosure of legal advice has been said to waive the attorney-client privilege "with respect to all documents which formed the basis for the advice, all documents considered by counsel in rendering that advice, and all reasonably contemporaneous documents reflecting discussions by counsel or others concerning that advice." *In re Pioneer Hi–Bred Int'l, Inc.,* 238 F.3d 1370, 1374–75 (Fed. Cir.2001). The rationale for waiving the attorney-client privilege as to documents with the same subject matter as the disclosed documents is predicated on fairness and con-

---

**10.** The court also rejects plaintiffs' contention that defendant's disclosure of the four "Cavanaugh Documents" somehow waives the attorney-client privilege over all documents relating to the Standard Contract or its interpretation. It is clear from the record that the disclosed documents (3 draft contracts and a memo containing minutes of a meeting) were prepared for distribution to third parties and, therefore, were not confidential, and not privileged. The disclosure of unprivileged documents, however, does not constitute waiver of privilege. *American Standard,* 828 F.2d at 746.

**11.** Only one of these documents, No 1878, appears to be a request for a legal opinion.

sistency. 8 Wigmore, *Evidence* § 2327 (McNaughton rev. ed.1961).

■■■ However, subject matter waiver is inapplicable where the disclosure was not made in the context of a judicial proceeding and did not afford the client an adversarial gain. *See In re von Bulow,* 828 F.2d 94, 102 (2d Cir.1987) (un-disclosed portions of a communication protected because "[w]here disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed."); *Graco Children's Prods. v. Dressler,* 1995 WL 360590 *8, 1995 U.S. Dist. LEXIS 8157 *23 (N.D.Ill.1995) (no subject matter waiver because no tactical advantage sought or gained by disclosure); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.,* 35 F.Supp.2d 582, 597 (N.D.Ohio 1999) (refusing to compel production of documents because no showing that disclosure was for a tactical or unfair advantage).

Accordingly, because plaintiffs have failed to demonstrate any prejudice or tactical disadvantage resulting from DOE's disclosure of two memoranda in a non-judicial setting over eight years ago, related confidential documents, if privileged, may be protected from disclosure. *See Stratagem Dev. Corp. v. Heron Int'l N.V.,* 153 F.R.D. 535, 545 (S.D.N.Y.1994).

Plaintiffs do not, as they must, satisfactorily explain why documents that on their face appear to be legal communications "clearly appear to be lacking in aspects requiring legal advice." Therefore, plaintiffs' motion to compel the production of the documents defendant has withheld under the attorney-client privilege is denied.

### Attorney Work–Product Privilege

The attorney work-product privilege attaches to documents prepared in anticipation of litigation or trial by a party or its representative. *Hickman v. Taylor,* 329 U.S. 495, 511–12, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The attorney work-product rule is indubitably applicable to government attorneys in litigation. *Sears, Roebuck,* 421 U.S. at 152,

95 S.Ct. 1504 (citing *Kaiser Aluminum,* 157 F.Supp. at 947).

The parties agree that the attorney work-product privilege applies only if the anticipated litigation is "fairly foreseeable" or "a real possibility." *Resident Advisory Bd. v. Rizzo,* 97 F.R.D. 749, 754 (E.D.Pa.1983); *James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138, 143 (D.Del.1982). Plaintiffs, however, contend that numerous documents withheld under this privilege and prepared in 1992 and 1993 were not prepared in anticipation of "fairly foreseeable future litigation," but merely as part of "programmatic planning."

From a review of the correspondence submitted by defendant, it is evident that litigation was "fairly foreseeable" by the agency as early as September 30, 1991, when the Minnesota Department of Public Service wrote to the Secretary of Energy: " ... it is highly probable that your department will experience significant delay in meeting its obligations to begin taking high-level radioactive waste in 1988. Therefore, I have directed my legal counsel to prepare a Petition for Relief." The fact that the first suit actually was filed in 1994, one or two years after the challenged documents were written, also supports defendant's position that imminent litigation was more than a mere possibility in 1991.

■■■ Accordingly, the privilege log provides sufficient basis to conclude that documents withheld under the attorney work-product privilege were created for "the primary motivating purpose," *see United States v. Gulf Oil Corp.,* 760 F.2d 292, 296–97 (Temp.Em.Ct.App.1985), of anticipated litigation. For reasons discussed in connection with the attorney-client privilege, the work-product of government attorneys created in anticipation of litigation is protected even if the litigation involves obligations under a statute, regulation, or a contract.

### CONCLUSION

For the foregoing reasons, the plaintiffs' motion to compel the production of documents withheld under the deliberative process privilege, the attorney-client privilege,

or the attorney work product privilege, is denied.